

## IN THE UNITED STATES DISTRICT COURT

## FOR THE WESTERN DISTRICT OF TENNESSEE

<table>
<tr><td>

CHRIS A. PRITCHARD, an inventor,

*Plaintiff*

vs.

AARON THOMPSON, HARMAN
CONNECTED SERVICES, SAMSUNG
ELECTRONICS,

*Defendants*
</td><td>

Case No. 2:22-cv-02838

Honorable: _____

AMENDED COMPLAINT

2:22-cv-02838
</td></tr>
</table>

1.    COMES NOW Plaintiff CHRIS A. PRITCHARD, with this complaint against the

Defendants, and alleges as follows:

### INTRODUCTION

2.    This is a trade secret misappropriation and IP Infringement dispute between

Plaintiff CHRIS A. PRITCHARD, an Inventor, and defendants AARON THOMPSON,

HARMAN CONNECTED SERVICES, AND SAMSUNG ELECTRONICS.

### PARTIES

3.    Plaintiff, CHRIS A. PRITCHARD (hereinafter "Plaintiff"), is an inventor and

businessman in Memphis, Tennessee area and resides in Germantown, TN.

4.    Defendant AARON THOMPSON (hereinafter "Mr. Thompson") is an individual

of 30001 Cabot Drive, Novi, MI 48377. Upon information and belief, at all times material

herein, Aaron was a Senior Platform Director at Defendant Harman Connected Services.

5.    Defendant, HARMAN CONNECTED SERVICES (hereinafter "HCS") is an

American subsidiary of Samsung Electronics through Harman International Industries, a wholly

1

owned subsidiary of Samsung Electronics. The connected services division supplies software services to the automotive industry. Upon information and belief, Defendant Harman is based at Novi, Michigan.

6.    Defendant SAMSUNG ELECTRONICS (hereinafter "Samsung") is a multinational electronics corporation headquartered in Seoul, South Korea. Samsung designs and manufactures a wide variety of products, including cellular mobile devices.

### JURISDICITON AND VENUE

7.    This action arises under the patent laws of the United States, Title 35 of the United States Code, 18 U.S. Code 1836, and under the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq*.

8.    This Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331, 1338, and 2201(a).

9.    Venue is proper in this district under 28 U.S.C. § 1391 as Plaintiff is subject to personal jurisdiction in this state. Plaintiff lives within the jurisdiction of this Court. Besides, a substantial part of the acts and omissions forming the basis of these claims occurred in the Western District of Tennessee and arose from the actions or inactions of the Defendants.

### FACTS

10.    Plaintiff, an inventor, is the owner of a design patent (US D 904, 256 S) with date of issue, December 08, 2020, and a utility patent (US 11,558,584 B2) with date of issue, January 17, 2023, for Plaintiff's invention called ADAS, an AI enabled dashcam. The invention(s) incorporates patented unique ornamental design with sophisticated Artificial Intelligence (AI) image processing capabilities by facilitating main server to vehicle communication with live streaming; vehicle to vehicle communication; and receipt and transmission of data with specific

United States District Court
For the Western District of Tennessee

2

instruction including information concerning driver behaviors, approaching vehicles and road hazards, among numerous other features.

11.     Plaintiff was searching for an engineering firm w/software services and emailed HCS, contacting Mr. Thompson, who was the Senior Platform Director, to inquire about engineering and software services, for hire or contract. Plaintiff explained he had a new and exciting invention, in which he had a proto-type, held the said design patent and utility patent-pending, and wanted to contract with HCS to build Plaintiff's product.

12.     On December 3, 2021, at 1:59 p.m., after accepting an email invite from Mr. Thompson, the two parties engaged in a confidential phone call related to Plaintiff's product, an AI enabled dashcam. Mr. Thompson, a representative of a multi-billion-dollar company stated that the correct way to go about sharing information and getting started on a possible, future collaborative effort, would be to work up a Non-Disclosure Agreement (NDA). Mr. Thompson suggested being the architect of such document, since HCS/Samsung would be more familiar with any project knowledge, pitfalls, and legal matters that may arise during the initial stages. He would therefore word such a document accurately to protect both parties involved, but the proper wording for the NDA would need to include word specific content related to the product as to protect HCS/Samsung as well as Plaintiff.

13.     Plaintiff had no reason to doubt Mr. Thompson's sincerity and confidentially shared the fact that the product has an issued design patent, and was in patent-pending status on the utility, as well as very specific proprietary design, technical and AI operations of the product not revealed in the patent(s) so that the NDA approved by an HCS/Samsung employee would encompass all the necessary details for protection of all parties involved. The NDA was promised within 48 hours and agreed upon by the next business day, which would have been on

United States District Court
For the Western District of Tennessee

3

Monday, December 6, 2021. Plaintiff awaited the NDA, so he could review and sign the document. Two weeks passed and Plaintiff, not overly concerned about the delay, wanted to cover an item or two that were originally discussed and about the delayed NDA. For the said reasons, he placed a call to Mr. Thompson to check in exactly two weeks after the original call on December 17, 2021.

14.    Plaintiff spoke to Mr. Thompson via cell at 1:59 p.m. on 12-17-2021 to inquire about the promised NDA and additional details of the upcoming project as there were questions for both parties. Mr. Thompson stated the following, "I am on vacation, and the NDA is in the works in the legal department at HCS." Plaintiff then told him to enjoy his vacation, thinking that Mr. Thompson had shown a genuine reason for the delay in the NDA. After this call, Mr. Thompson would not return any calls/texts or emails placed by Plaintiff to Mr. Thompson. It was now January 2022 and no contact from HCS through any channel, so Plaintiff decided to try another avenue as February 2022 approached.

15.    Plaintiff then placed an email on February 9, 2022 at 8:35 p.m.to Mr. Josh Henderson, Global Director of New Business Development for Harman, explaining the situation with Mr. Thompson and if he knew of any other contact info or communication channels to rectify this now very concerning matter. Plaintiff did include in the email to Mr. Henderson, a short synopsis of the issue, with the main point being the NDA and Plaintiff's need for engineering/software services with Harman. Henderson explained, he would, "see if he could help"

16.    At this point, Plaintiff knew that there was a possibility that all the information shared with Mr. Thompson had fallen into the wrong hands and that an HCS/Samsung employee may misappropriate the information, confidentially shared in the two conversations with Mr.

<div style="writing-mode: vertical-rl">United States District Court
For the Western District of Tennessee</div>

4

Thompson. Plaintiff called the customer service on 2-26-22 at 4:34 p.m. to no avail. However, he went as far as to explain his situation and plight to a customer service contact that he reached at a 24-hour hotline, identified as Manish Meharia. Plaintiff requested any one from HCS/Samsung to call back with any pertinent information.

17.     On April 6, at 3:34 p.m., Plaintiff received a call back from Ramachandran Narayan, who identified himself as Client Director of Harman, and that he would be working on this matter for Plaintiff and would get to the bottom of this after speaking with Mr. Aaron Thompson to hear his side after multiple emails going unanswered. Ramachandran Narayan sent an email 4-19-22 at 8:33 a.m. telling Plaintiff, he had contacted Senior Platform Director, Aaron Thompson, who stated he was going to reach out to Plaintiff, when the timing was right for an opportunity. Plaintiff thought that was an odd statement: "when timing was right for a business opportunity?"

18.     Plaintiff was inquiring about services and needed pricing on the advertised engineering and software services. Accordingly, Plaintiff was a potential customer. Mr. Thompson received an email from Ramachandran Narayan copying Plaintiff on May 9, 2022 at 5:51 p.m. stating he did speak with and urged Mr. Thompson to reach out directly to Plaintiff if he saw an opportunity to engage in business. Again, there was no response from Mr. Thompson.

19.     Plaintiff was again still trying to employ HCS/Samsung at this point and thought this was a sign that HCS/Samsung may be up to something with his shared information. At this point all contact ceased from HCS/Samsung to Plaintiff. Plaintiff did, however, continue to visit Harman.com to look for any additional emails, phone numbers or mailing addresses that may illicit a response or communication, to no avail. One of these visits to this website that occurred in June did however reveal something very disturbing:  An exact replica of Plaintiff's product! It

was complete with literally every item discussed on the phone calls in December 2021, and mimicked every AI operation listed in the patent pending page on the USPTO website.

20.    On August 11, 2022, Plaintiff felt that with the evidence discovered, HCS/Samsung left no options other than a cease-and-desist letter sent directly to the company to stop this travesty. The certified letter was received and signed for at HCS headquarters 30001 Cabot Drive, Novi, MI 48377 on 8-18-22 at 10:41 a.m.

21.    On September 19, 2022, more trade secret misappropriation was uncovered, and IP infringement discovered at the below address on harman.com: car.harman.com/solutions/smart-auto/connected-automotive-adas-dashcam.

22.    Plaintiff was shocked that he was duped into divulging trade secrets and protected IP information under the guise of information needing to be disclosed for the proper wording of a Non-Disclosure agreement.

23.    Plaintiff is therefore being harmed financially by an individual masquerading as a legitimate employee of HCS/Samsung.

## CLAIMS FOR RELIEF

### COUNT ONE

**Trade Secret Misappropriation**

24.    The preceding paragraphs are fully incorporated herein.

25.    Both Federal and Tennessee Trade Secret Laws govern Plaintiff's misappropriation claims.

26.    Under federal law, 18 U.S. Code § 1836 (b) (1) provides that "an owner of a trade secret that is misappropriated may bring a civil action under this subsection if the trade secret is related to a product or service used in, or intended for use in, interstate or foreign commerce."

United States District Court
For the Western District of Tennessee

27.    The said law defines a trade secret as:

all forms and types of financial, business, scientific, technical, economic, or
engineering information, including patterns, plans, compilations, program
devices, formulas, designs, prototypes, methods, techniques, processes,
procedures, programs, or codes, whether tangible or intangible, and whether or
how stored, compiled, or memorialized physically, electronically, graphically,
photographically, or in writing if— (A) the owner thereof has taken reasonable
measures to keep such information secret; and (B) the information derives
independent economic value, actual or potential, from not being generally
known to, and not being readily ascertainable through proper means by,
another person who can obtain economic value from the disclosure or use of
the information;

28.    The said law further defines misappropriation as:

(A) acquisition of a trade secret of another by a person who knows or has
reason to know that the trade secret was acquired by improper means; or (B)
disclosure or use of a trade secret of another without express or implied consent
by a person who— (i) used improper means to acquire knowledge of the trade
secret; (ii) at the time of disclosure or use, knew or had reason to know that the
knowledge of the trade secret was— (I) derived from or through a person who
had used improper means to acquire the trade secret; (II) acquired under
circumstances giving rise to a duty to maintain the secrecy of the trade secret or
limit the use of the trade secret; or (III) derived from or through a person who
owed a duty to the person seeking relief to maintain the secrecy of the trade
secret or limit the use of the trade secret; or (iii) before a material change of the
position of the person, knew or had reason to know that— (I) the trade secret
was a trade secret; and (II) knowledge of the trade secret had been acquired by
accident or mistake;

29.    TN Code § 47-25-1702 (2021) contains a similar definition of "trade secret" and

"misappropriation", like the said federal law.

30.    Plaintiff avers that all the required conditions for this cause of action have been

met.

31.    HCS employees including and starting with Mr. Thompson fraudulently acquired

certain protected proprietary information as it relates to Plaintiff's dashcam from a confidential

conversation initiated by Mr. Thompson via an email invite on Dec. 1, 2021 at 4:20 a.m.

United States District Court
For the Western District of Tennessee

7

32.     Mr. Thompson followed up on that email invite after Plaintiff scheduled and received a call on 12-3-21. On the approximately 26 minute phone call, Mr. Thompson duped Plaintiff into divulging IP sensitive data and trade secret information relating to an AI enabled dashcam that Plaintiff had invented with the promise of a protected document referred to as an NDA- NON DISCLOSURE AGREEMENT. Plaintiff carefully gave the information that Mr. Thompson angled for as he was searching for a firm that offered engineering services per the HCS website information.  Furthermore, it was understood that any information shared that day on the 26 minute phone call and the additional call on 12-17-21 was confidential between two potential collaborators until the NDA was signed by the two parties.

33.     The NDA was never delivered by the HCS/Samsung employee as promised, but the use of the plaintiff's Intellectual Property and trade secret information were used by HCS/Samsung immediately. Although HCS/Samsung had an elementary dashcam available to consumers June 2020, it was a very simple square camera with front/rear facing lens, IPhone or Android applications, which are features present in all modern dashcams. However, the Defendants appropriated Plaintiff's sophisticated AI technology, as evidenced in their newly released product, which is now available from HCS/Samsung w/misappropriated AI tech, along with IP: US D 904,258 S and utility patent US 11,558,584 B2 directly copied from conversations between Plaintiff and Mr. Thompson in December of 2021.

34.     Instead of following through with the NDA and steps to begin a new working relationship, Senior Director Aaron Thompson accelerated its entry into the AI enabled dashcam market by stealing Plaintiff's trade secrets and infringing on Plaintiff's Intellectual Property.

35.     HCS/Samsung's Thompson colluded with other HCS/Samsung department employees.

United States District Court
For the Western District of Tennessee

36.    HCS/Samsung, through its employees' wrongful, willful and illegal conduct, has succeeded in getting an unfair advantage on the competition and in the process, a clear violation of DTSA, and Plaintiff's rights.

37.    Plaintiff seeks damages in the form of lost profits and price erosion caused by HCS/Samsung's wrongful and accelerated entry into the market through its outright theft of Plaintiff's trade secrets. HCS/Samsung should further be ordered to disgorge any profits it receives prior to the entry of the requested injunction from its sale and exportation of products developed from its stolen trade secrets.

38.    Plaintiff also seeks a finding that HCS/Samsung deliberately concealed the truth willfully after Plaintiff confronting Defendants' employees with the findings. The Defendants' conduct was therefore oppressive, fraudulent, and malicious, and constitutes despicable conduct in conscious disregard for Plaintiff's Intellectual Property rights. Therefore, Plaintiff is entitled to an award of exemplary or punitive damages.

39.    Plaintiff is also entitled to an injunction compelling the Defendants to cease and desist from using the Plaintiff's trade secret in their product(s).

## COUNT TWO

### Infringement of U.S. Patent No. US 11,558,584 B2

40.    The preceding paragraphs are fully incorporated herein.

41.    35 U.S. Code § 271 provides that "[a] patentee shall have remedy by civil action for infringement of his patent."

42.    Plaintiff has demonstrated above how his patent was infringed by the Defendants. Notably, Plaintiff owns a utility patent (US 11,558,584 B2)

United States District Court
For the Western District of Tennessee

43.     Defendants appropriated the said patent in their product, HARMAN ADAS Vision dashcam:  A sales and technical and literature description of the product on the HARMAN website, (which was removed once complaint was filed by plaintiff), on Defendant Harman's ADAS Vision dashcam reads, "key features of HARMAN Vision include high definition dual cameras w/night vision, secure live streaming, a speaker and mic for voice controls, touch display OBD interface, built in sensors and AI for ADAS, and LTE connectivity. Compared to what's available in the market today. HARMAN Vision is one-of-kind in supporting onboard cameras for both front view and driver facing view and it enables remote vehicle surveillance features when the driver is not in the vehicle. The dashcam comes with GPS (global positioning system) and gravity sensor (G-sensor) and cloud storage enabling the vehicle to sense a crash and preserve the footage taken immediately before and after the incident"

44.     Although HCS/Samsung had an elementary dashcam available to consumers June 2020, it was a very simple square camera with front/rear facing lens, IPhone or Android applications, which are features present in all modern dashcams. The Defendants only came up with the said product after Plaintiff disclosed his trade secret to Mr. Thompson, which secret was appropriated by the Defendants as evidenced.

45.     Plaintiff is therefore entitled to damages adequate to compensate for the infringement, together with interest and costs as fixed by the court.

46.     Plaintiff also seeks a finding that HCS/Samsung deliberately concealed the truth willfully after Plaintiff confronting Defendants' employees with the findings. The Defendants' conduct was therefore oppressive, fraudulent, and malicious, and constitutes despicable conduct in conscious disregard for Plaintiff's Intellectual Property rights. Therefore, Plaintiff is entitled to an award of exemplary or punitive damages.

47.     Plaintiff is also entitled to an injunction compelling the Defendants to cease and desist from using the Plaintiff's and utility patent in their product(s).

## COUNT THREE

### Infringement of U.S. Patent No. US D904,258 S

48.     The preceding paragraphs are fully incorporated herein.

49.     35 U.S. Code § 281 provides that "(a) patentee shall have remedy by civil action for infringement of his patent."

50.     Plaintiff has demonstrated above how his patent was infringed by the Defendants; Notably, Plaintiff owns a design patent (US D 904, 258 S) for Plaintiff's invention called ADAS, an AI enabled dashcam.

51.     Defendants appropriated the said patent in their product called ADAS HARMAN Smart Vision Dashcam by construction of the design of the dashcam by the rectangular, smooth and rounded bordered exterior shell and rear-view mirror shape of unti, all of which are an integral part the design of said dashcam.

52.     Although HCS/Samsung had an elementary dashcam available for consumers prior to December 3, 2021, it was a very simple squared, box design with front and rear facing lens with a dash mount adhesive set-up.   The defendants came up with the following architectural pattern from the design patent of the Plaintiff:  Rectangular, smooth and rounded borders, rear-view mirror shape, and round mounting bracket. Additionally the  patented design features that were misappropriated by the Defendant, and make the whole dashcam an article of manufacturer are as follows:  round bracket mount, strategically placed camera lens, microphone and speaker design.

United States District Court
For the Western District of Tennessee

53.     Plaintiff is therefore entitled to damages adequate to compensate for the infringement, together with interest and costs as fixed by the court.

54.     Plaintiff also seeks a finding that HCS/Samsung deliberately concealed the truth willfully after Plaintiff confronting Defendants' employees with the findings. The Defendants' conduct was therefore oppressive, fraudulent, and malicious, and constitutes despicable conduct in conscious disregard for Plaintiff's Intellectual Property rights.  Therefore, Plaintiff is entitled to an award of exemplary of punitive damages.

55.     Plaintiff is also entitled to an injunction compelling the Defendants to cease and desist from using the Plaintiff's design patent in their product(s).

## COUNT FOUR

### Breech of implied duty of good faith and fair dealing

56.     The preceding paragraphs are fully incorporated herein.

57.     First, a contractual relationship existed between Plaintiff and Defendants. Specifically, the oral contract was entered on December 3, 2021, at 1:59 p.m., when Plaintiff and Mr. Thompson engaged in a confidential call upon which Plaintiff sought the correct way to go about sharing information and getting started on a possible, future collaborative effort regarding Plaintiff's invention.

58.     Mr. Thompson, acting as a representative and/or agent of Defendant Harman, and Samsung, agreed to work up a Non-Disclosure Agreement and secure Plaintiff's confidential information.

59.     Accordingly, part of the implied duties of the Defendant(s) included the duty to ensure the secrecy of the disclosed information, and to avoid any unauthorized appropriation of the information.

United States District Court
For the Western District of Tennessee

60.    However, Mr. Thompson disclosed the confidential information to the Defendants, and colluded with the Defendants to appropriate the Plaintiff's trade secret to introduce a new product in the market.

61.    As a result of the Defendant's action, Plaintiff's intellectual property rights have been violated. Plaintiff has therefore lost economic benefit in and to his trade secrets. It follows; Defendant should be held liable for the breach of the said implied duty of good faith and fair dealing.

62.    Plaintiff also seeks a finding that HCS/Samsung deliberately concealed the truth willfully after Plaintiff confronting Defendants' employees with the findings. The Defendants' conduct was therefore oppressive, fraudulent, and malicious, and constitutes despicable conduct in conscious disregard for Plaintiff's Intellectual Property rights. Therefore, Plaintiff is entitled to an award of exemplary or punitive damages.

63.    Plaintiff is also entitled to an injunction compelling the Defendants to cease and desist from using the Plaintiff's utility and design patent in their product(s).

## COUNT FIVE

### Declaratory Judgment

64.    The preceding paragraphs are fully incorporated herein.

65.    There now exists, between the parties hereto, a dispute and controversy to which the Plaintiff and the Defendants are entitled to have a declaration of their rights and further relief relating to the facts and circumstances as set forth in this action.

66.    The dispute is whether the Defendants are liable for infringing on Plaintiff's intellectual property rights by appropriating Plaintiff's trade secret, and using Plaintiff's patent(s)

United States District Court
For the Western District of Tennessee

to introduce a new product in the market, which product incorporates the said patent(s) and/or trade secret(s).

67.     Plaintiff respectfully request this Honorable Court issue a declaratory judgment declaring that the actions and/or inactions of the Defendants are blameworthy, and issue appropriate remedies thereof.  The declaratory judgment will also help Plaintiff ascertain his rights in and to his trade secret and patent(s).

## COUNT SIX

### Fraud- Intentional Misrepresentation

68.     The preceding paragraphs are fully incorporated herein.

69.     Defendant Mr. Thompson, as an agent of Defendant Harman and Samsung, intentionally made false representations that he would prepare a Non-Disclosure Agreement to secure Plaintiff's trade secret, and that he would ensure confidentiality in the business information shared to him by Plaintiff.

70.     These representations made by Defendant Mr. Thompson were false.

71.     Mr. Thompson knew that the representations were false when he made them or made the representations recklessly and without regard for their truth.

72.     Mr. Thompson intended that Plaintiff relies on the representations.

73.     Plaintiff reasonably relied on the representations.

74.     All Defendants are liable for Mr. Thompson's actions and/or inactions, under the doctrine of *respondeat superior,* since Mr. Thompson was acting as agent of Harman, which in turn is Samsung's subsidiary.

75.     As a result of the Defendant's action, Plaintiff's intellectual property rights have been violated. Plaintiff has therefore lost economic benefit in and to his trade secrets. It follows;

Defendant should be held liable for the breach of the said implied duty of good faith and fair dealing.

76.    Plaintiff also seeks a finding that HCS/Samsung deliberately concealed the truth willfully after Plaintiff confronting Defendants' employees with the findings. The Defendants' conduct was therefore oppressive, fraudulent, and malicious, and constitutes despicable conduct in conscious disregard for Plaintiff's Intellectual Property rights. Therefore, Plaintiff is entitled to an award of exemplary or punitive damages.

77.    Plaintiff is also entitled to an injunction compelling the Defendants to cease and desist from using the Plaintiff's utility and design patent in their product(s).

<div align="center">

**COUNT SEVEN**

**Fraud- Concealment**

</div>

78.    The preceding paragraphs are fully incorporated herein.

79.    The Defendants intentionally failed to disclose material facts to Plaintiff. Notably, Plaintiff made several attempts to follow up on the NDA that was promised by Mr. Thompson.

80.    Instead of getting a clear answer, the individuals Plaintiff contacted acted oblivious of the goings-on.

81.    However, Plaintiff later found out that his trade secrets were already appropriated by the Defendants into their latest product.

82.    Had Plaintiff known earlier that Mr. Thompson had already disclosed the trade secrets to the Defendants, he would have made diligent efforts to prevent the Defendants from appropriating the trade secrets and patent(s) into their product.

83.    As a result of the Defendant's action, Plaintiff's intellectual property rights have been violated. Plaintiff has therefore lost economic benefit in and to his trade secrets. It follows;

United States District Court
For the Western District of Tennessee

Defendant should be held liable for the breach of the said implied duty of good faith and fair dealing.

84.     Plaintiff also seeks a finding that HCS/Samsung deliberately concealed the truth willfully after Plaintiff confronting Defendants' employees with the findings. The Defendants' conduct was therefore oppressive, fraudulent, and malicious, and constitutes despicable conduct in conscious disregard for Plaintiff's Intellectual Property rights. Therefore, Plaintiff is entitled to an award of exemplary or punitive damages.

85.     Plaintiff is also entitled to an injunction compelling the Defendants to cease and desist from using the Plaintiff's utility and design patent in their product(s).

## COUNT EIGHT

### Promissory Fraud

86.     The preceding paragraphs are fully incorporated herein.

87.     Defendant Mr. Thompson, as an agent of Defendant Harman and Samsung, intentionally made promises that he would prepare a Non-Disclosure Agreement to secure Plaintiff's trade secret, and that he would ensure confidentiality in the business information shared to him by Plaintiff.

88.     The Defendant did not intend to perform the promises when he made it.

89.     The Defendant intended the Plaintiff to rely on the promises, so that he may disclose his trade secrets.

90.     Plaintiff reasonably relied on the promises and proceeded to divulge his trade secrets to the Defendant.

United States District Court
For the Western District of Tennessee

91.    All Defendants are liable for Mr. Thompson's actions and/or inactions, under the doctrine of *respondeat superior,* since Mr. Thompson was acting as agent of Harman, which in turn is Samsung's subsidiary.

92.    As a result of the Defendant's action, Plaintiff's intellectual property rights have been violated. Plaintiff has therefore lost economic benefit in and to his trade secrets. It follows; Defendant should be held liable for the breach of the said implied duty of good faith and fair dealing.

93.    Plaintiff also seeks a finding that HCS/Samsung deliberately concealed the truth willfully after Plaintiff confronting Defendants' employees with the findings. The Defendants' conduct was therefore oppressive, fraudulent, and malicious, and constitutes despicable conduct in conscious disregard for Plaintiff's Intellectual Property rights. Therefore, Plaintiff is entitled to an award of exemplary or punitive damages.

94.    Plaintiff is also entitled to an injunction compelling the Defendants to cease and desist from using the Plaintiff's utility and design patent in their product(s).

## COUNT NINE

### Negligent Misrepresentation

95.    The preceding paragraphs are fully incorporated herein.

96.    Defendant Mr. Thompson, as an agent of Defendant Harman and Samsung, intentionally made false representations that he would prepare a Non-Disclosure Agreement to secure Plaintiff's trade secret, and that he would ensure confidentiality in the business information shared to him by Plaintiff.

17

97.     Although the Defendants may have believed that the representations were true, they had no reasonable grounds for believing the representations were true when Mr. Thompson made them.

98.     Mr. Thompson intended that Plaintiff relies on the representations, to disclose his trade secrets.

99.     Plaintiff reasonably relied on the representations.

100.    All Defendants are liable for Mr. Thompson's actions and/or inactions, under the doctrine of *respondeat superior,* since Mr. Thompson was acting as agent of Harman, which in turn is Samsung's subsidiary.

101.    As a result of the Defendant's action, Plaintiff's intellectual property rights have been violated. Plaintiff has therefore lost economic benefit in and to his trade secrets. It follows; Defendant should be held liable for the breach of the said implied duty of good faith and fair dealing.

102.    Plaintiff also seeks a finding that HCS/Samsung deliberately concealed the truth willfully after Plaintiff confronting Defendants' employees with the findings. The Defendants' conduct was therefore oppressive, fraudulent, and malicious, and constitutes despicable conduct in conscious disregard for Plaintiff's Intellectual Property rights. Therefore, Plaintiff is entitled to an award of exemplary or punitive damages.

103.    Plaintiff is also entitled to an injunction compelling the Defendants to cease and desist from using the Plaintiff's utility and design patent in their product(s).

## COUNT TEN

### Breach of Contract

104.    The preceding paragraphs are fully incorporated herein.

105.    A contractual relationship existed between Plaintiff and Defendants. Specifically, the oral contract was entered on December 3, 2021, at 1:59 p.m., when Plaintiff and Mr. Thompson engaged in a confidential call upon which Plaintiff sought the correct way to go about sharing information and getting started on a possible, future collaborative effort regarding Plaintiff's invention.

106.    Mr. Thompson, acting as a representative and/or agent of Defendant Harman, and Samsung, agreed to work up a Non-Disclosure Agreement and secure Plaintiff's confidential information.

107.    Accordingly, part of the duties of the Defendant(s) included the duty to ensure the secrecy of the disclosed information, and to avoid any unauthorized appropriation of the information.

108.    However, Mr. Thompson disclosed the confidential information to the Defendants, and colluded with the Defendants to appropriate the Plaintiff's trade secret to introduce a new product in the market.

109.    As a result of the Defendant's action, Plaintiff's intellectual property rights have been violated. Plaintiff has therefore lost economic benefit in and to his trade secrets. It follows; Defendant should be held liable for the breach of the said implied duty of good faith and fair dealing.

110.    Plaintiff also seeks a finding that HCS/Samsung deliberately concealed the truth willfully after Plaintiff confronting Defendants' employees with the findings. The Defendants' conduct was therefore oppressive, fraudulent, and malicious, and constitutes despicable conduct in conscious disregard for Plaintiff's Intellectual Property rights. Therefore, Plaintiff is entitled to an award of exemplary or punitive damages.

111.    Plaintiff is also entitled to an injunction compelling the Defendants to cease and desist from using the Plaintiff's utility and design patent in their product(s).

## COUNT 11

### Tort of Another

112.    The preceding paragraphs are fully incorporated herein.

113.    As a result of the Defendants' tortious conduct described herein, Plaintiff has been forced to protect his interests by bringing this Federal Action against the Defendants, wherein he seeks compensatory damages, punitive damages, injunctive relief to prevent the Defendants from continuing to use his trade secrets, confidential information, and patent(s), and an award of fees and costs.

114.    In prosecuting this Federal Action, Plaintiff has incurred fees, costs, and other expenses. Under the tort of another doctrine, Plaintiff is entitled to recover those expenditures incurred in connection with the Federal Action from the Defendants.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff is entitled to damages from the Defendants, and he hereby prays that judgment be entered in his favor and against the Defendants as follows:

i. An Order that the Defendants have directly stolen, either literally or under the doctrine of equivalents, one or more trade secrets from the Plaintiff;

ii. An Order for all compensatory damages to under applicable law, including lost profits, but in no event less than a reasonable royalty;

iii. That Defendants be ordered to provide an accounting;

iv. That Plaintiff, as the prevailing party, shall recover from the Defendants all taxable costs of court;

20

*United States District Court
For the Western District of Tennessee*

v.   That Plaintiff shall recover from the Defendants all pre- and post-judgment interest on the damage award, calculated to the highest interest rates allowed by law;

vi.   That the Defendants and those acting in concert with the Defendants be preliminarily and permanently enjoined from any further conduct based on the theft of trade secrets of Plaintiff;

vii.   That Defendants be preliminarily and permanently enjoined from engaging in any marketing and sales efforts based on the theft of Plaintiff's trade secrets, including ceasing all marketing or sales efforts for the Harman smart/auto Vision ADAS Dashcam;

viii.   Declaratory judgment;

ix.   Punitive damages;

x.   Such other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all clams so triable.

Respectfully submitted:

Dated: 1-23-23

CHRIS A. PRITCHARD

Plaintiff, pro se