**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TENNESSEE**
**WESTERN DIVISION**

CHRIS A. PRITCHARD,

          Plaintiff,

   v.

AARON THOMPSON, HARMAN
CONNECTED SERVICES, SAMSUNG
ELECTRONICS,

         Defendants.

Case No. 2:22-cv-02838-JPM-tmp

**DEFENDANTS AARON THOMPSON AND HARMAN CONNECTED SERVICES INC.'S, MEMORANDUM OF FACTS AND LAW IN SUPPORT OF THEIR MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION, IMPROPER VENUE, AND FAILURE TO STATE A CLAIM**

## <u>TABLE OF CONTENTS</u>

I.      INTRODUCTION ............................................................................................... 1

II.     FACTUAL ALLEGATIONS AND BACKGROUND ...................................... 3

III.    ARGUMENT ....................................................................................................... 4

        A.      Legal Standard ....................................................................................... 4

        B.      The Patent Claims Should Be Dismissed for Improper Venue .............. 5

        C.      This District Is Also an Improper Venue for the Non-Patent Claims .... 6

        D.      All Claims Should be Dismissed for Lack of Personal Jurisdiction ...... 7

                1.      Neither Thompson nor Harman Purposefully Availed Themselves of the Privilege of Doing Business in Tennessee ................................. 8

                2.      The Claims Do Not Arise Out of or Relate to Defendants' Activities in the Forum ...................................................................... 9

                3.      Exercising Personal Jurisdiction over Defendants Would Not Be Reasonable or Fair ................................................................. 10

        E.      In the Alternative, Plaintiff's Claims Should Be Dismissed for Failure to State a Claim upon Which Relief Can Be Granted ............................... 10

                1.      Plaintiff Does Not Allege Misappropriation of a Trade Secret ............... 11

                2.      Plaintiff's Design Patent Infringement Claim Should Be Dismissed Because the Accused Product Is Plainly Dissimilar to the Patented Design ................................................................................ 14

                3.      Plaintiff's Utility Patent Infringement Claim Should Be Dismissed Because Infringement Cannot Be Established ........................................... 16

                4.      Plaintiff's Contract Claim Should Be Dismissed Because Plaintiff Does Not Allege Formation of a Contract ........................................... 17

                5.      Plaintiff's Remaining Claims Fail to the Extent They Rely upon the Trade Secret, Patent, and Breach of Contract Claims ........................................... 18

                6.      Plaintiff's State and Common Law Non-Contract Claims Are Preempted ................................................................................ 19

IV.     CONCLUSION ................................................................................................. 20

i

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*16630 Southfield Ltd. P'ship v. Flagstar Bank, F.S.B.*,
727 F.3d 502 (6th Cir. 2013) .................................................20

*Archer v. Nabors Truck Serv., Inc.*,
No. 2:16-cv-02610-JTF-TMP, 2018 WL 6576419 (W.D. Tenn. July 26, 2018).....................2

*ASC Engineered Sols., LLC v. Island Indus., Inc.*,
No. 2:20-cv-02284-JPM-CGC, 2021 WL 2583555 (W.D. Tenn. June 23,
2021) ....................................................................11

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)..........................................................5

*AutoTrakk, LLC v. Auto. Leasing Specialists, Inc.*,
No. 4:16-cv-01981, 2017 WL 2936730 (M.D. Pa. July 10, 2017) .........................12

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)......................................................5, 13

*Bishop v. Lucent Techs., Inc.*,
520 F.3d 516 (6th Cir. 2008) .................................................5

*Cadence Bank, N.A. v. The Alpha Tr.*,
473 S.W.3d 756 (Tenn. Ct. App. 2015) .......................................18

*Canaday v. Anthem Companies, Inc.*,
9 F.4th 392 (6th Cir. 2021) ................................................7, 8

*Colida v. Nokia, Inc.*,
347 F. App'x 568 (Fed. Cir. 2009) ........................................15, 16

*Conn v. Zakharov*,
667 F.3d 705 (6th Cir. 2012) .................................................7

*Cracker Barrel Old Country Store Inc. v. Epperson*,
284 S.W.3d 303 (Tenn. 2009).................................................18

*In re Cray Inc.*,
871 F.3d 1355 (Fed. Cir. 2017)...............................................6

*Daimler AG v. Bauman*,
571 U.S. 117 (2014)..........................................................7

ii

*Gone To The Beach, LLC v. Choicepoint Servs., Inc.*,
434 F. Supp. 2d 534 (W.D. Tenn. 2006)................................................................5

*Harris v. Lloyds TSB Bank, PLC*,
281 Fed.Appx. 489 (6th Cir. 2008).......................................................................8

*Hauck Mfg. Co. v. Astec Indus., Inc.*,
375 F.Supp.2d 649 (E.D.Tenn. 2004)..................................................................19

*Helicopteros Nacionales de Colombia, S.A. v. Hall*,
466 U.S. 408 (1984)..............................................................................................7

*Hickory Specialties, Inc. v. Forest Flavors Int'l, Inc.*,
215 F.3d 1326 (6th Cir. 2000) ............................................................................11

*Nalco Co. v. Chem-Mod*,
LLC, 883 F.3d 1337 (Fed. Cir. 2018) .................................................................16

*Neogen Corp. v. Neo Gen Screening, Inc.*,
282 F.3d 883 (6th Cir. 2002) ...........................................................................5, 8

*NexLearn, LLC v. Allen Interactions, Inc.*,
859 F.3d 1371 (Fed. Cir. 2017)............................................................................9

*NOVA Chems., Inc. v. Sekisui Plastics Co.*,
579 F.3d 319 (3d Cir. 2009)................................................................................14

*OurPet's Co. v. IRIS USA, Inc.*,
No. 1:14-cv-1642, 2015 WL 12780599 (N.D. Ohio Mar. 23, 2015)..............15, 16

*PartyLite Gifts, Inc. v. Swiss Colony Occasions*,
No. 3:06-cv-170, 2006 WL 2370338 (E.D. Tenn. Aug. 15, 2006 ........................11

*Pauwels v. Deloitte LLP*,
No. 19-cv-2313, 2020 WL 818742 (S.D.N.Y. Feb. 19, 2020) .............................13

*PGT Trucking, Inc. v. Jones*,
No. 15-cv-1032, 2015 WL 4094265 (W.D. Tenn. July 7, 2015)...........................19

*Pond Guy, Inc. v. Aquascape Designs, Inc.*,
No. 13-cv-13229, 2014 WL 2863871 (E.D. Mich. June 24, 2014) ......................10

*Prov Int'l, Inc. v. Rubens Dalle Lucca*,
No. 8:19-cv-978-T-23AAS, 2019 WL 5578880 (M.D. Fla. Oct. 29, 2019)...........13

*Ruckelshaus v. Monsanto Co.*,
467 U.S. 986 (1984)............................................................................................13

*SFS Check, LLC v. First Bank of Delaware*,
    774 F.3d 351 (6th Cir. 2014) ...........................................................2, 5, 8, 11

*SmithKline Diag., Inc. v. Helena Lab. Corp.*,
    859 F.2d 878 (Fed. Cir. 1988) ...................................................................16

*Synthes (U.S.A.) v. G.M. Dos Reis Jr. Ind. Com de Equip. Medico*,
    563 F.3d 1285 (Fed. Cir. 2009) ...................................................................9

*TC Heartland LLC v. Kraft Foods Grp. Brands LLC*,
    581 U.S. 258 (2017) ...................................................................................5

*Tech. for Energy Corp. v. Hardy*,
    No. 3:16-cv-91, 2018 WL 8460253 (E.D. Tenn. Jan. 22, 2018) ...........10

*Theunissen v. Matthews*,
    935 F.2d 1454 (6th Cir. 1991) ....................................................................5

*Valve Corp. v. Ironburg Inventions Ltd.*,
    8 F.4th 1364 (Fed. Cir. 2021) ...................................................................10

*Wolverine World Wide, Inc. v. Nike, Inc.*,
    38 F.3d 1192 (Fed. Cir. 1994) ..................................................................17

*Woodall v. DSI Renal, Inc.*,
    No. 11-cv-2590, 2012 WL 1038626 (W.D. Tenn. Mar. 27, 2012) .........17

*Zabit v. Brandometry, LLC*,
    540 F.Supp.3d 412 (S.D.N.Y. May 18, 2021) .........................................12

**Statutes**

28 U.S.C. § 1391(b)(1) ......................................................................................6

28 U.S.C. § 1400(b) ...................................................................................1, 2, 5

35 U.S.C. § 271(a) .............................................................................................9

Defend Trade Secrets Act, 18 U.S.C. § 1836 .................................................11

T.C.A. § 20-2-225 .............................................................................................7

Tenn. Code Ann. § 47–25–1708(a).................................................................19

Tenn. Code Ann. § 47–25–1708(b)(1).............................................................19

Tenn. Code Ann. § 47-25-1701 to 1709 .........................................................11

Tenn. Code Ann. § 47-25-1702(2)(B)(i)..........................................................14

Tenn. Code Ann. §§ 47-25-1702(4)(A) and (B) .............................................................................11

## I.      INTRODUCTION

Plaintiff filed the present suit—alleging intellectual property theft based on one 26-minute phone call initiated by Plaintiff—in an improper venue.  Thus, Defendants[1] Aaron Thompson ("Thompson") and Harman Connected Services, Inc. ("Harman") respectfully move, pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(3), for dismissal of all claims based on the Court's lack of personal jurisdiction over the Michigan-based individual and the California-based corporation, and on statutory improper venue under 28 U.S.C. § 1400(b) for the patent claims asserted in the Amended Complaint ("Complaint").   Alternatively, Defendants move under Rule 12(b)(6) to dismiss all claims because Plaintiff's own factual allegations show that he cannot prevail on any of the intellectual property misappropriation or infringement claims, and that the common-law claims are pre-empted and otherwise not viable as a matter of law.

As to personal jurisdiction, neither Thompson nor Harman resides in Tennessee and neither has any meaningful connection to this forum.  In addition, not only does the Complaint fail to allege facts showing that Defendants purposefully availed themselves of the privilege of doing business in this state, but Plaintiff admits it was *Plaintiff* who reached out to Thompson in Michigan to try to establish a potential business arrangement with Harman.  What followed from Plaintiff's unilateral outreach to Thompson was a single 26-minute telephone conversation and a few additional *unsuccessful* attempts by Plaintiff to further engage with him.  On these facts alone, asserting personal jurisdiction over Thompson and Harman would deprive both of due process.

It is well-established that the patent claims cannot proceed here because such claims must be brought in the judicial district where the defendant either resides or has a regular and established

---

[1] Plaintiff also names as a defendant, "Samsung Electronics," an entity headquartered in South Korea ("Samsung").  Compl. ¶ 6.  Plaintiff mistakenly served a different U.S. entity and has informed Defendants that he intends to serve Samsung via the Hague Convention.  This motion is thus brought at this time only on behalf of Thompson and Harman.

place of business.  28 U.S.C. § 1400(b).  Because neither Thompson nor Harman has any physical presence in this District, venue is improper as to Plaintiff's Counts alleging infringement of U.S. Patent Nos. 11,558,584 B2 (the "utility patent") and D 904,258 S (the "design patent").[2]

Even if the Court were to find venue and personal jurisdiction appropriate (and, respectfully, it should not), all claims should be dismissed based on the Complaint's factual admissions.  *First*, Plaintiff asserts misappropriation of claimed trade secrets in Count 1 based on information he allegedly disclosed during a 26-minute phone call with Mr. Thompson, but the Complaint admits that Plaintiff disclosed his alleged trade secrets with no non-disclosure agreement ("NDA") in place.  Compl. ¶ 12.  Elements of a trade secrets cause of action include establishing that the holder of the alleged trade secret took reasonable precautions to prevent its disclosure, and that the alleged trade secret was wrongfully taken.  Plaintiff's admitted voluntary disclosure without an NDA, which was later "to [be] work[ed] up" (Compl. ¶ 12) and "never delivered" (Compl. ¶ 33), shows neither requirement can be met.  Furthermore, the Complaint fails to provide the requisite identification of any particular trade secret.

*Second*, Plaintiff's claims for infringement of his design and utility patents go nowhere. Plaintiff patented a "machine learning" (or "AI") enhanced rearview camera mirror for in-vehicle surveillance.  By contrast, the accused dash cam product—specifically referenced at the web address in ¶ 21 of the Complaint[3]—bears absolutely no resemblance to the design claimed in the

---

[2] Venue is also improper for a second reason: because the product, while prototyped, was never sold in this venue or any other.  Thompson Decl. ¶ 12.

[3] Although Plaintiff referenced, but did not attach to the Complaint, a copy of the web page depiction of the allegedly infringing products, or copies of his utility or design patents, those items may properly be considered without converting Defendants' motion into one for summary judgment.  As this Court has noted, the Sixth Circuit has taken a "liberal view of what matters fall within the pleadings for purposes of Rule 12(b)(6)."  *Archer v. Nabors Truck Serv., Inc.*, No. 2:16-cv-02610-JTF-TMP, 2018 WL 6576419, at *2 (W.D. Tenn. July 26, 2018) (quoting *Armengau v. Cline*, 7 F. App'x 336, 343 (6th Cir. 2001)).  Where, as here, documents are "referred to in a

design patent.  And claim 1 of the utility patent, its sole independent claim, includes the element of "an accessory replacing rearview mirror in a primary vehicle" (col. 12, lines 3–4), but the web page Plaintiff cites shows that the accused Harman device does not replace a vehicle's rearview mirror.  Finally, because the remaining claims are preempted and/or rest upon the legally deficient trade secret, breach of contract, and infringement claims, they fail too.

## II.   FACTUAL ALLEGATIONS AND BACKGROUND

According to the Complaint, Plaintiff Chris A. Pritchard is a businessman who resides in Germantown, Tennessee.  Compl. ¶ 3.  Defendant Aaron Thompson is alleged to be a Senior Platform Director at Defendant Harman Connected Services, Inc. ("Harman") (*Id.* ¶ 4), but is actually employed by Harman International, Inc., Harman's corporate parent.   Harman's "connected services division" supplies services to the automotive and consumer products industries.  *Id.*  ¶ 5.  Plaintiff alleges that both Defendants are based in Michigan, *Id.* ¶¶ 4, 5, though as noted below, only Thompson is there; Harman's headquarters are in Mountain View, California.

Plaintiff filed this action against Thompson, Harman, and "Samsung Electronics" on December 9, 2022, ECF No. 1, and amended it on January 23, 2023, ECF No. 18.  The operative Complaint alleges eleven causes of action, which arise out of the same nucleus of common fact.

As alleged in the Complaint, Plaintiff is the owner of the asserted design patent and utility patent.  *Id.* ¶ 10.  Both patents allegedly relate to an "ADAS" or an "AI enabled dashcam." *Id.* According to the Complaint, the invention "incorporates Artificial Intelligence (AI) image processing capabilities by facilitating main server to vehicle communication with live streaming; vehicle to vehicle communication; and receipt and transmission of data with specific instruction

---

complaint and central to the claim," they may be considered part of the pleadings." *Id.* (quoting *Armengau*, 7 F. App'x at 343 (citing *Jackson v. City of Columbus*, 194 F.3d 737, 745 (6th Cir. 1999))).

including information about other approaching vehicles and scanning registration plates of other vehicles, among the many other features." *Id.*

Plaintiff alleges he contacted Thompson as part of his search for an engineering firm with software services, and "wanted to contract with HCS to build Plaintiff's product." *Id.* ¶ 11. The two spoke by phone for about 26 minutes on the afternoon of December 3, 2021. *Id.* ¶¶ 12, 32.

Although Plaintiff characterizes the call as "confidential," ¶ 12, the Complaint admits that Thompson explained that "the correct way to go about sharing information and getting started on a possible, future collaborative effort, would be to work up a Non-Disclosure Agreement (NDA)." *Id.* According to the Complaint, Thompson would take the lead on having the NDA drafted. *Id.* After the call, Thompson allegedly proceeded to become difficult to reach and "all contact ceased." *Id.* ¶¶ 14–19. No NDA was in place at the time of the call, or ever signed. *See id.*

In June 2022, Plaintiff alleges that he found on Harman's website an "exact replica of Plaintiff's product." *Id.* ¶ 19. This suit followed, allegedly based on "IP infringement discovered at … car.harman.com/solutions/smart-auto/connected-automotive-adas-dashcam." *Id.* ¶ 21. Notably, Plaintiff alleges that Harman changed its dashcam design after the December 2021 telephone call; however, the referenced publicly-available webpage showing the prototype at issue was published in July 2021 (and the prototype designed earlier than that). Thompson Decl. ¶ 11, Ex. B. Furthermore, the claim of "IP infringement" is based solely on the fact sheet from that webpage, not on evidence of any sales activity such as an actual listing offering the product for sale. The product has not, in fact, been sold in Tennessee or anywhere else. *Id.* ¶ 12.

## III.   ARGUMENT

### A.   Legal Standard

In challenges to personal jurisdiction, the "plaintiff [] has the burden of establishing" it and must "make a prima facie showing of jurisdiction… by establishing with reasonable particularity

sufficient contacts between [the Defendant] and the forum state to support jurisdiction." *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 887 (6th Cir. 2002) (internal quotations omitted). The same is true for venue. *Gone To The Beach, LLC v. Choicepoint Servs., Inc.*, 434 F. Supp. 2d 534, 537 (W.D. Tenn. 2006). Such Rule 12(b)(2) and (b)(3) challenges permit courts to examine facts outside the pleadings. *Id.*; *Theunissen v. Matthews,* 935 F.2d 1454, 1458 (6th Cir. 1991)*.*

In contrast, while a Rule 12(b)(6) challenge must take the allegations as true, the claim must still be "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertions' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555–57). "Conclusory allegations or legal conclusions masquerading as factual allegations will not suffice." *Bishop v. Lucent Techs., Inc.*, 520 F.3d 516, 519 (6th Cir. 2008) (internal citations omitted).

## B.   The Patent Claims Should Be Dismissed for Improper Venue

Venue for the patent claims is governed by 28 U.S.C. § 1400(b). In *TC Heartland LLC v. Kraft Foods Grp. Brands LLC*, 581 U.S. 258, 265 (2017), the Supreme Court reaffirmed that this "constitute[s] the exclusive provision controlling venue in patent infringement proceedings." (internal quotation marks omitted). Under § 1400(b), claims for patent infringement must be brought either (1) "in the judicial district where the defendant resides" or (2) "where the defendant has committed acts of infringement and has a regular and established place of business." 28 U.S.C. § 1400(b). *TC Heartland* also held that "a domestic corporation 'resides' only in its State of incorporation for purposes of the patent venue statute." *TC Heartland*, 581 U.S. at 262.

This District is not a proper venue for asserting claims of patent infringement against either Thompson or Harman under either prong of § 1400(b). *First*, Plaintiff admits that Thompson is a

resident of Michigan, Compl. ¶ 4, and alleges that Harman is also in Michigan, Compl. ¶ 5, though actually it is a Delaware corporation headquartered in California.  Thompson Decl. ¶ 6.

*Second*, nothing in the Complaint even suggests that either Thompson or Harman has any—let alone a "regular and established"—place of business in this District, which the Federal Circuit has interpreted as imposing three requirements; namely, "(1) there must be a physical place in the district; (2) it must be a regular and established place of business; and (3) it must be the place of the defendant."  *In re Cray Inc.*, 871 F.3d 1355, 1360 (Fed. Cir. 2017).  The Complaint includes no allegations that would satisfy any of these criteria for either Thompson or Harman, nor could it, since neither Thompson nor Harman has any place of business in this District.  Thompson Decl. ¶¶ 7, 8.  And, there have been no acts of infringement in this District as neither Defendant has made, used, offered for sale, or sold the accused product in this District (or anywhere else).  Thompson Decl. ¶ 12.  Venue here for Plaintiff's patent claims is thus improper.

### C.    This District Is Also an Improper Venue for the Non-Patent Claims

The Court should dismiss the non-patent claims against Defendants under the general venue statute, 28 U.S.C. § 1391(b)(1).  Venue here is improper because no Defendant resides in Tennessee, let alone in this District.  Second, a substantial part of the events or omissions giving rise to the claims did not take place in Tennessee.  Instead, the Complaint alleges that the wrongful conduct took place in Michigan, the state to which Plaintiff placed his call and where his claimed trade secrets were allegedly misappropriated.  Compl. ¶¶ 4, 5, 11.  Third, the Complaint does not— and cannot—allege that there is no other judicial district in which this action may otherwise be brought under § 1391(b)(1) or (2) so as to allow Plaintiff to rely upon the "fallback" alternative in § 1391(b)(3), because Harman may be found in California and Thompson in Michigan.  Accordingly, the non-patent claims should also be dismissed for improper venue.

### D.       All Claims Should be Dismissed for Lack of Personal Jurisdiction

In addition, all claims should be dismissed for lack of personal jurisdiction.  Because the

Tennessee long-arm statute extends personal jurisdiction to the full extent allowed by the federal

Constitution, T.C.A. § 20-2-225, the analysis comes down to whether each defendant has sufficient

minimum contacts with Tennessee to support general or specific jurisdiction.  A court may exercise

general jurisdiction only where a defendant's contacts with the forum state are "continuous and

systematic."  *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414–15 (1984).

Absent "continuous and systematic" contacts sufficient for a party to be "essentially at home" in

the jurisdiction, jurisdiction over a nonresident defendant is limited to "a suit arising out of or

related to the defendant's contacts with the forum," *i.e.*, "specific" jurisdiction.  *Id.* at 414 n.8;

*Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014).

Neither Harman nor Thompson has sufficient minimum contacts with Tennessee to permit

this Court's constitutional exercise of personal jurisdiction under either the general or specific

prongs.  As shown above, there is insufficient basis for the exercise of general jurisdiction because

neither Thompson nor Harman has any physical presence, or any contacts approximating a

physical presence, in Tennessee.  Thompson Decl. ¶¶ 6, 7; *see Conn v. Zakharov*, 667 F.3d 705,

720 (6th Cir. 2012) (holding that general jurisdiction requires "pervasive contacts that would

approximate physical presence within the state.").

To establish specific jurisdiction "'[w]hat is needed … is a connection between the forum

and the specific claims at issue.'"  *Canaday v. Anthem Companies, Inc.*, 9 F.4th 392, 396 (6th Cir.

2021), cert. denied, 142 S. Ct. 2777 (2022) (quoting *Bristol-Myers Squibb Co. v. Superior Ct.*, 137

S. Ct. 1773, 1781 (2017)).  In the Sixth Circuit, this is a three-step inquiry:

> First, the defendant must purposefully avail himself of the privilege of acting in the
> forum state. Second, the cause of action must arise from the defendant's activities
> there. Finally, the acts of the defendant or consequences caused by the defendant

must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Canaday*, 9 F.4th at 408 (quotation omitted).  None of the three steps is satisfied here.

  1. <u>Neither Thompson nor Harman Purposefully Availed Themselves of the Privilege of Doing Business in Tennessee</u>

As the Sixth Circuit has noted, purposeful availment occurs when the defendant takes actions that create a "substantial connection" with the forum state such that he can "reasonably anticipate being haled into court there." *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 889 (6th Cir. 2002) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985)).  As shown by the Complaint's admissions and by the Declaration of Aaron Thompson, neither he nor Harman has taken any steps vis-à-vis Tennessee to establish such a connection.

First, as noted above, neither Thompson nor Harman has any physical presence in Tennessee.  In addition, no facts in the Complaint show that Thompson or Harman did anything that would permit a reasonable person to conclude they were subjecting themselves to the jurisdiction of Tennessee.  To the contrary, Plaintiff alleges *that he reached out to Thompson*, who thereafter followed-up on Plaintiff's unsolicited inquiry.  Compl. ¶ 11; Thompson Decl. ¶ 14.  *See Harris v. Lloyds TSB Bank, PLC,* 281 Fed.Appx. 489, 495 (6th Cir. 2008) (finding that there was no personal jurisdiction as "all of [the Defendants] communications were in response to communications initiated by [the Plaintiff] and others in Tennessee").  And, at no point did Thompson even appreciate that Plaintiff, on the other end of the phone, was calling from Tennessee.  Thompson Decl. ¶ 15.  As the Sixth Circuit has noted, these types of contacts with a state fall far short of establishing purposeful availment.  *See SFS Check, LLC v. First Bank of Delaware*, 774 F.3d 351, 357 (6th Cir. 2014) (noting that a person "does not create a 'substantial connection' with another state merely by answering the phone.")

2.      The Claims Do Not Arise Out of or Relate to Defendants' Activities in the Forum

Plaintiff's claims furthermore do not arise out of or relate to Defendants' in-forum contacts. For a patent claim to arise from or relate to contacts with a forum, the Federal Circuit has held that those contacts must have a nexus to "the making, using, offering for sale, selling, and/or importing into the United States products, systems, and/or apparatuses that infringe" the patent—that is: the activities that give rise to a claim under the Patent Act. *See Synthes (U.S.A.) v. G.M. Dos Reis Jr. Ind. Com de Equip. Medico*, 563 F.3d 1285, 1298 (Fed. Cir. 2009).

For both asserted patents, the only alleged potential contact with Tennessee—*i.e.*, Plaintiff's phone call with Thompson—is entirely irrelevant to any allegedly infringing activities. Nothing that occurred during the phone call qualifies as or relates to making, using, offering for sale, or selling an accused product under 35 U.S.C. § 271(a).   Accordingly, the phone call is irrelevant to the jurisdictional inquiry.   *See NexLearn, LLC v. Allen Interactions, Inc.*, 859 F.3d 1371, 1377 (Fed. Cir. 2017) (only relevant in-forum contacts are those from which an infringement claim would "proximately arise").   The Thompson Declaration confirms that Harman has not made, used, offered for sale or sold any of the accused product in Tennessee; indeed, the product is not on the market.   Thompson Decl. ¶ 12.   Nor did any design work take place here.   *Id*.

As to the other claims, they cannot arise out of or relate to Defendants' in-forum contacts because the allegedly misappropriated trade secrets appeared on Harman's website in July, months before Plaintiff even placed the December phone call from Tennessee (and the claims thus also fail as a result).   *Compare* Thompson Decl. ¶ 11, Exhibit B, *with* Compl. ¶ 32.[4]

---

[4] Harman's website has since been updated, but a pre-updated copy of that web page is attached as Exhibits A and B to the Thompson Declaration. The pre-updated versions of the webpage from July 24, 2021, and December 3, 2022, were recovered using the "Wayback Machine" at the Internet archive, found at https:// archive.org/web/, and have been authenticated by Aaron Thompson as true and correct copies of the webpage. See Thompson Declaration, ¶ 11. "District

    3.    <u>Exercising Personal Jurisdiction over Defendants Would Not Be Reasonable or Fair</u>

This Court need not reach the third point of the specific jurisdiction analysis because, as shown above, Plaintiff cannot establish purposeful availment or infringing activities in this District. Nonetheless, the exercise of personal jurisdiction here would be neither fair nor reasonable because as shown above, Plaintiff admits he reached out of state to Harman, not vice versa, such that Tennessee does not have a great interest in this matter. *See, e.g.*, *Tech. for Energy Corp. v. Hardy*, No. 3:16-cv-91, 2018 WL 8460253, at *8 (E.D. Tenn. Jan. 22, 2018) (forum state has a diminished interest where alleged acts took place out of state).

**E.    In the Alternative, Plaintiff's Claims Should Be Dismissed for Failure to State a Claim upon Which Relief Can Be Granted**

Even if venue and personal jurisdiction were proper, the Court should exercise its gatekeeper role and dismiss all claims pursuant to Fed. R. Civ. 12(b)(6) because the Complaint's admissions show that no claim can be stated or could reasonably be advanced by discovery. No fact development could cure the fundamental deficiencies of Plaintiff's claim of intellectual property theft based on a 26-minute call where the accused dash cam product, designed prior to the call, is fundamentally different in design and function from Plaintiff's rearview mirror cam. Because, in addition, the product is not even sold, this is not a case that should waste the Court and parties' time.

---

courts have taken judicial notice of the contents of webpages available through the Wayback Machine as facts that can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." *Valve Corp. v. Ironburg Inventions Ltd.*, 8 F.4th 1364, 1374 (Fed. Cir. 2021); *see also Pond Guy, Inc. v. Aquascape Designs, Inc.*, No. 13-cv-13229, 2014 WL 2863871, at *4 (E.D. Mich. June 24, 2014).

1.    <u>Plaintiff Does Not Allege Misappropriation of a Trade Secret</u>

Under the Tennessee Uniform Trade Secrets Act ("TUTSA"),[5] the elements for a misappropriation of trade secrets claim are: (1) the existence of a trade secret; (2) misappropriation of the trade secret by the defendant; and (3) resulting detriment to the plaintiff.  *PartyLite Gifts, Inc. v. Swiss Colony Occasions*, No. 3:06-cv-170, 2006 WL 2370338, at *3 (E.D. Tenn. Aug. 15, 2006), *aff'd*, 246 F. App'x 969 (6th Cir. 2007); *see also* Tenn. Code Ann. § 47-25-1701 to 1709 (West).  The Complaint fails to allege at least two of the three elements of a trade secret claim.

a)    *Plaintiff Fails to Allege the Existence of a Trade Secret*

"Indispensable to an effective allegation of a trade secret is proof that the matter is, more or less, secret."  1 Milgrim on Trade Secrets § 1.03 (2022).  This requirement is codified in Tenn. Code Ann. §§ 47-25-1702(4)(A) and (B), which essentially provide that the alleged information must not only be valuable because it is not generally known, but that it be subject to reasonable efforts to maintain its secrecy.  Plaintiff's admissions show both requirements cannot be met.

*First*, Plaintiff has failed to allege the existence of any information whose value exists because it is not generally known.  As alleged in the Complaint, the reason for the December 3, 2021 call with Mr. Thompson was Plaintiff's desire to discuss "a new and exciting invention, in which he had a proto-type, held the said design patent and utility patent pending ...." Compl. ¶ 11. But, even had Plaintiff recited the entire contents of the design and utility patents, they are, by their very nature, public.  *Hickory Specialties, Inc. v. Forest Flavors Int'l, Inc.*, 215 F.3d 1326, at *5

---

[5] Plaintiff also alleges that he has a claim for relief under federal law, citing the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836.  Compl. ¶ 26.  As this Court has noted, although the DTSA creates an independent cause of action separate and apart from TUTSA, "[t]he respective requirements for establishing misappropriation under these statutes are largely the same" and can be considered together in a "single analysis."  *ASC Engineered Sols., LLC v. Island Indus., Inc.*, No. 2:20-cv-02284-JPM-CGC, 2021 WL 2583555, at *3 (W.D. Tenn. June 23, 2021).

(6th Cir. 2000) ("The law is clear that information in the public domain by way of a patent can no longer be a trade secret.").

Plaintiff attempts to avoid the problems created by his publicly available patents by alleging that his phone call also covered "very specific proprietary design, technical and AI operations of the product not revealed in the patent(s)." Compl. ¶ 13. But he never identifies any of these "very specific" things, and such an allegation is implausible on its face given the nature of the technology and public patent disclosures. It strains credulity that an audio phone call could convey any non-public visual design elements not already disclosed in the design patent, or any AI or software algorithm. Plaintiff fails to identify any information, much less information that has value because it is not generally known.

The Sixth Circuit's recent opinion in *Caudill Seed & Warehouse Co. v. Jarrow Formulas, Inc.*, 53 F.4th 368, 380 (6th Cir. 2022), is instructive as to why Plaintiff's allegations are insufficient. There, the court noted that a Plaintiff must "defin[e] the information for which protection is sought with sufficient definiteness to permit a court to apply the criteria for protection … and to determine the fact of an appropriation." *Id.* at 380–81 (quotation omitted). This requires a Plaintiff to set forth the alleged secret with sufficient particularity so as to "separate the trade secret from matters of general knowledge in the trade or special knowledge of persons skilled in the trade." *Id.* (citation omitted). Courts across the country have applied the same reasoning articulated in *Caudill* to dismiss actions where the allegations did not sufficiently set forth the metes and bounds of the asserted trade secret.[6] Under the facts here, Plaintiff, at a minimum, must

---

[6] *See, e.g.*, *Zabit v. Brandometry, LLC*, 540 F.Supp.3d 412, 422 (S.D.N.Y. May 18, 2021) ("district courts in this circuit routinely require that plaintiffs plead their trade secrets with sufficient specificity to inform the defendants of what they are alleged to have misappropriated …."); *AutoTrakk, LLC v. Auto. Leasing Specialists, Inc.*, No. 4:16-cv-01981, 2017 WL 2936730, at **11–12, 15–16 (M.D. Pa. July 10, 2017) (dismissing action where the allegations did not provide

distinguish his claimed trade secrets from his public patent disclosures.  For this reason, Plaintiff's

failure to identify any alleged trade secret counsels for dismissal of the claim.

*Second*, and fatal to his claim, Plaintiff effectively concedes that he cannot show his

supposed trade secret was subject to reasonable efforts to maintain its secrecy.  As the Complaint

makes clear, the parties never entered into an agreement to maintain confidentiality.  Plaintiff

concedes that any next step would be preceded with a draft NDA to facilitate "sharing information

and getting started on a possible, *future* collaborative effort."  Compl.  ¶ 12 (emphasis added).  It

is a matter of black-letter law that "disclosure of information to third parties without adequate

confidentiality arrangements extinguishes the trade secret." 1 Milgrim on Trade Secrets § 1.03

(2022); *see also Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1002 (1984) (observing that once a

trade secret is disclosed to "others who are under no obligation to protect the confidentiality of the

information, or [the information is] otherwise publicly disclose[d] …, [the] property right is

extinguished.").  Where, as here, the pleadings make clear that the plaintiff disclosed the asserted

trade secret without confidentiality protections in place,[7] courts routinely summarily dismiss the

claims.  *See, e.g.*, *Pauwels v. Deloitte LLP*, No. 19-cv-2313, 2020 WL 818742, at **8–10

---

a basis to distinguish the alleged trade secrets from information that was available on plaintiff's
web site); *Vendavo, Inc. v. Price f(x) AG*, No. 17-cv-06930, 2018 WL 1456067, at **3–4 (N.D.
Cal. Mar. 23, 2018) (dismissing complaint alleging misappropriation of its "source code, customer
lists and customer related information, pricing information" on the ground that rather than
identifying the trade secrets at issue, the allegations described the secrets in only broad, categorical
terms); *Prov Int'l, Inc. v. Rubens Dalle Lucca*, No. 8:19-cv-978-T-23AAS, 2019 WL 5578880, at
*8 (M.D. Fla. Oct. 29, 2019) ("Although the complaint need not spell out the details of the trade
secret, the complaint must describe the subject matter of the trade secret with sufficient
particularity to separate the trade secret from matters of general knowledge in the trade … .").

[7] The Complaint repeatedly alleges that his conversation with Thompson was "confidential."  *See,
e.g.*, Compl. ¶¶ 12, 13, 16, 31, 32.  Plaintiff never states any factual basis for this legal conclusion
and, moreover, the legal conclusion is contrary to the alleged facts.  *Twombly*, 550 U.S. at 555
(Plaintiff's "obligation to provide the grounds of his entitle[ment] to relief requires more than
labels and conclusions, and a formulaic recitation of the elements of a cause of action will not
do.").

(S.D.N.Y. Feb. 19, 2020) (dismissing trade secret claim where, *inter alia*, plaintiff failed to allege it took steps to keep the alleged trade secret confidential); *NOVA Chems., Inc. v. Sekisui Plastics Co.*, 579 F.3d 319, 327–28 (3d Cir. 2009) (holding disclosure of trade secret information pursuant to a license agreement that contained no confidentiality provisions destroyed the trade secret).

> b)   *Plaintiff Fails to Allege Misappropriation of a Trade Secret*

Plaintiff's trade secret claim also fails for the separate, yet related, reason that Plaintiff fails to allege that his trade secrets were misappropriated by the Defendants.  As relevant here, TUTSA defines "misappropriation" to require the use of "improper means to acquire knowledge of the trade secret."  Tenn. Code Ann. § 47-25-1702(2)(B)(i).  And TUTSA defines "improper means" to include "theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy or limit use, or espionage through electronic or other means." *Id.* at § 1702(1).

The allegations in the Complaint undercut any allegation that Plaintiff's alleged trade secrets were obtained through improper means.  Plaintiff reached out to Thompson and then proceeded to knowingly disclose his alleged trade secrets without the protections provided by an NDA.  Compl. ¶ 32.  Under these circumstances, Mr. Thompson did nothing more than answer an unsolicited phone call, and where Defendants did not obtain the information through improper means, there can be no misappropriation.  Tenn. Code Ann. § 47-25-1702(2)(B)(i).

> 2.   Plaintiff's Design Patent Infringement Claim Should Be Dismissed
> Because the Accused Product Is Plainly Dissimilar to the Patented Design

As the Federal Circuit recognized in *Egyptian Goddess, Inc. v. Swisa, Inc.*, claims of infringement of a design patent can sometimes present a straightforward issue: whether the claimed and accused designs are "plainly dissimilar" such that "it will be clear without more that the patentee has not met its burden of proving the two designs would appear 'substantially the same.'" 543 F.3d 665, 678 (Fed. Cir. 2008) (en banc).  For this reason, it is now common practice to dismiss

an action under Rule 12 where the protected and accused designs are so "plainly dissimilar" that there is no basis for asserting the claim. *OurPet's Co. v. IRIS USA, Inc.*, No. 1:14-cv-1642, 2015 WL 12780599, at *2 n.2 (N.D. Ohio Mar. 23, 2015) (collecting cases). This is such a case.

Infringement of a design patent does not require any specialized knowledge, training, or the revelation of facts that can only be obtained through expensive discovery. Instead, infringement is assessed using the "ordinary observer" test:

> [I]f, in the eye of an ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same, if the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to be the other, the first one patented is infringed by the other.

*Egyptian Goddess*, 543 F.3d at 670 (quoting *Gorham Co. v. White*, 81 U.S. 511, 528 (1871)). Courts applying this "ordinary observer" test at the pleadings stage routinely do so by simply comparing the patented design with the allegedly infringing product. If the court concludes that the alleged infringement is "facially implausible," dismissal is appropriate. *See, e.g.*, *Colida v. Nokia, Inc.*, 347 F. App'x 568, 570 (Fed. Cir. 2009).

Here, as is plainly evident below, no ordinary observer could confuse the patented design for a mirror cam (on the left) with the design of the accused product dash cam (on the right):



Thompson Decl., Exs. D and B. The patented design is a rearview mirror replacement while the accused product is a dash cam that does not have any mirror but instead features a driver-facing

touch display.  In addition, Plaintiff's claimed design has a windshield mount behind the mirror while the accused product has a dash mount below the apparatus.  Other than the fact the products are in-car camera products, the products do not bear any similarities: the shapes of the two products are not similar across any plane of view.  The differences between the accused product and the patented design are substantially more significant than the differences in analogous design patent cases dismissed on the pleadings.  *See, e.g.*, *OurPet's*, 2015 WL 12780599, at *3 (dismissing claim where the two designs were directed to the same product which also performed the same function, but had distinct shapes); *Colida*, 347 F. App'x at 570 (same).  Dismissal is appropriate here because it is implausible that the accused product infringes.  *Id.*

3.  Plaintiff's Utility Patent Infringement Claim Should Be Dismissed Because Infringement Cannot Be Established

The Complaint alleges that the accused Harman ADAS Vision dashcam infringes the utility patent.  Compl. ¶¶ 43–47.  It is elemental that to establish infringement, Plaintiff must establish that "every limitation of the patent claim asserted to be infringed is found in the accused [product], either literally or by an equivalent."  *SmithKline Diag., Inc. v. Helena Lab. Corp.*, 859 F.2d 878, 889 (Fed. Cir. 1988).  If even a single claim limitation is not practiced by the accused product, the product does not infringe as a matter of law.  *Id.*

To be sure, it is not Plaintiff's burden to prove his case at this stage.  *Nalco Co. v. Chem-Mod*, LLC, 883 F.3d 1337, 1350 (Fed. Cir. 2018) (quoting *In re Bill of Lading Transmission & Processing Sys. Pat. Litig.*, 681 F.3d 1323, 1335 (Fed. Cir. 2012)).  But where, as here, the pleadings fail to allege "enough facts to raise a reasonable expectation that discovery will reveal evidence' to support the plaintiff's allegations," dismissal is warranted.  *Nalco,* 883 F.3d at 1350.

The allegations show here that discovery can reveal no evidence that will sustain Plaintiff's infringement claim as to the utility patent, which contains a single independent claim, Claim 1.

The first element of Claim 1 recites:  "A vehicle surveillance system, comprising: at least one client device disposed as an accessory *replacing rearview mirror in a primary vehicle* ...." Thompson Decl., Ex. E (Utility patent) at col. 12 ll. 2–4 (emphasis added).  As shown above, the accused product sits on the car dash (hence "dashcam") and does not replace a rearview mirror.[8] *See* Thompson Decl., Exs. A, B, and C.  Accordingly, the accused product cannot infringe Claim 1 of the utility patent, or any other claims because the rest of them each depend from claim 1, and no amount of discovery will change that.  *Wolverine World Wide, Inc. v. Nike, Inc.*, 38 F.3d 1192, 1199 (Fed. Cir. 1994).  Other bases for non-infringement also exist but the complete absence of this limitation makes the non-infringement issue one that can be decided as a matter of law.

4.    Plaintiff's Contract Claim Should Be Dismissed Because Plaintiff Does Not Allege Formation of a Contract

Plaintiff alleges that "[a] contractual relationship existed between Plaintiff and Defendants."  Compl. ¶ 105.  As a basis for this conclusory statement of law, Plaintiff alleges that an "oral contract was entered on December 3, 2021, at 1:59 p.m., when Plaintiff and Mr. Thompson engaged in a confidential call upon which Plaintiff sought the correct way to go about sharing information and getting started on a possible, future collaborative effort regarding Plaintiff's invention." *Id.*  Stripping away the legal conclusions from the factual assertions, these allegations are insufficient to establish a contract between Plaintiff and the Defendants, as they do not provide facts supporting offer, acceptance, and consideration, and thus are not "of a sufficiently 'reasonable degree of definiteness and certainty' to determine whether [defendant's] performance was consistent with its contractual duty." *Woodall v. DSI Renal, Inc.*, No. 11-cv-2590, 2012 WL 1038626, at *8 (W.D. Tenn. Mar. 27, 2012) (quoting *Cagle v. Hybner*, No. M2006–02073–COA–

---

[8] This difference between the patent claims and the accused product is particularly vital because Plaintiff needed to amend his claims during prosecution to add the "rearview" mirror limitation to overcome a prior art rejection by the Examiner.  Thompson Decl., Ex. G.

R3–cv, 2008 WL 2649643, at *19 (Tenn. Ct. App. July 3, 2008)).  Nowhere in the Complaint does Plaintiff state who proposed the supposed oral contract, who accepted the proposed contract (and how), and what was promised by each party under the terms of the contractual agreement.  Without these foundational elements, Plaintiff's breach of contract claim fails out of the gate.

> 5.    Plaintiff's Remaining Claims Fail to the Extent They Rely upon the Trade Secret, Patent, and Breach of Contract Claims

The legal defects in Plaintiff's trade secret, patent, and contract claims infect each of the remaining seven claims asserted against the Defendants to the point that, once the defective assertions are excised from the claims, what remains fails to state a claim for relief.  For example, Plaintiff's Breach of Implied Duty of Good Faith and Fair Dealing claim (Count 4) cannot stand because, as shown above, there was no underlying contract.  As a matter of black-letter law, "[w]ithout a contract, [a party] cannot sustain a claim for breach of the implied duty of good faith and fair dealing."  *Cadence Bank, N.A. v. The Alpha Tr.*, 473 S.W.3d 756, 774 (Tenn. Ct. App. 2015). Likewise, Plaintiff's Declaratory Judgment claim simply requests a declaration of rights based upon the same trade secret and patent issues that fail as a matter of law.  Compl. ¶ 66.

Plaintiff's Fraud and Negligent Misrepresentation claims (Counts 6, 7, 8, and 9) likewise fail as they each assert that the injury Plaintiff suffered from reliance on the allegedly fraudulent conduct was Plaintiff's "lost economic benefit in and to his trade secrets."  Compl. ¶¶ 75, 83, 92, and 101.  Similarly, Plaintiff's claim for "tort of another" (Compl. ¶ 113)[9] is simply a repackaged trade secrets claim which, as a matter of law shown below, preempts the non-contract claims.

---

[9] Plaintiff's Count 11, "Tort of Another," is also legally infirm.  While Tennessee recognizes the "tort of another" doctrine, Plaintiff improperly deploys it here as a simple fee-shifting provision contrary to the American Rule, to which Tennessee also adheres.  *See Cracker Barrel Old Country Store Inc. v. Epperson*, 284 S.W.3d 303, 308 (Tenn. 2009).

6.    <u>Plaintiff's State and Common Law Non-Contract Claims Are Preempted</u>

TUTSA expressly provides that it "displaces conflicting tort, restitutionary, and other law of this state providing civil remedies for misappropriation of a trade secret." Tenn. Code Ann. § 47–25–1708(a). Although the Tennessee Supreme Court has not yet interpreted the scope of TUTSA's preemption provision, the Tennessee Court of Appeals and federal district courts in Tennessee have uniformly interpreted TUTSA to preempt any claim that "necessarily rises or falls based on whether the defendant is found to have 'misappropriated' a 'trade secret' as those two terms are defined in the [T]UTSA."[10] *Hauck Mfg. Co. v. Astec Indus., Inc.*, 375 F.Supp.2d 649, 658 (E.D.Tenn. 2004); *PGT Trucking, Inc. v. Jones*, No. 15-cv-1032, 2015 WL 4094265, at *4 (W.D. Tenn. July 7, 2015) (collecting cases following *Hauck*).

Here, each of Plaintiff's fraud and negligent misrepresentation claims "rises or falls" based on the Complaint's allegations that Defendants misappropriated Plaintiff's trade secrets. Indeed, each claim asserts that the injury suffered by Plaintiff was the loss of his economic benefit to his alleged trade secrets. Compl. ¶¶ 67, 75, 83, 932 109.[11] Accordingly, even if the Court were to conclude that Plaintiff's non-contract state law claims stated claims for relief, the Court should find that they are preempted by state law and accordingly dismiss the claims.

---

[10] TUTSA expressly does not preempt contractual remedies, Tenn. Code Ann. § 47–25–1708(b)(1), but as shown above, the contract claim fails as a matter of law.

[11] The analysis does not turn on whether trade secrets were actually disclosed during the alleged phone call. As the Court in *Hauck* succinctly stated:

> A claim cannot be preempted or not preempted based entirely upon whether or not the information at issue qualifies as a trade secret. If the information is a trade secret, the plaintiff's claim is preempted; if not, the plaintiff has no legal interest upon which to base his or her claim. Either way, the claim is not cognizable.

*Hauck*, 375 F. Supp. 2d at 657; *see also id.* at 656 ("It is a legal *non sequitur* to suggest general tort causes may be employed to protect legal rights which otherwise do not exist.").

As the Court is aware, "[d]iscovery imposes costs—not only on defendants but also on courts and society. And plaintiffs can use the threat of imposing these burdens to coerce defendants into settling." *16630 Southfield Ltd. P'ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 504 (6th Cir. 2013). Rules 8 and 12 provide the federal courts' only meaningful protections for defendants faced with the difficult choice of offering nuisance settlements to get rid of meritless claims or submitting themselves to costly and invasive litigation. Accordingly, the Court of Appeals has recognized that these rules serve the "vital practical function" of "prevent[ing] plaintiffs from launching a case into discovery—and from brandishing the threat of discovery during settlement negotiations— 'when there is no reasonable likelihood that [they] can construct a claim from the events related in the complaint.'" *Id.* (quoting *Twombly*, 550 U.S. at 558). For the reasons set forth above, this action falls squarely into the category of cases where discovery cannot serve its truth-seeking function but will instead merely serve as a tool to subject Defendants to expensive and intrusive litigation.

## IV.    CONCLUSION

For the foregoing reasons, all claims should be dismissed with prejudice.

Dated: February 6, 2023

Respectfully submitted,

DEFENDANTS AARON THOMPSON and
HARMAN CONNECTED SERVICES, INC.

By their attorneys,

*/s/ Darryl M. Woo*

Darryl M. Woo
California Bar No. 100513
(*pro hac vice*)
dwoo@goodwinlaw.com
GOODWIN PROCTER LLP
Three Embarcadero Center
San Francisco, California 94111
Tel.: +1 415 733 6000
Fax.: +1 415 677 9041

Huiya Wu
New York Bar No. 3892858
(*pro hac vice*)
hwu@goodwinlaw.com
GOODWIN PROCTER LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018
Tel: +1 212 459 7270

Matthew R. Ginther
Tennessee Bar No. 036377
mginther@goodwinlaw.com
GOODWIN PROCTER LLP
1900 N. Street, N.W.
Washington, DC 20009
Tel: +1 202 346 4000