IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

───────────────────────────────────────────────

CHRIS A. PRITCHARD,                    )
                                       )
        Plaintiff,                     )
                                       )
v.                                     )    No. 22-cv-2838-JPM-tmp
                                       )
AARON THOMPSON, HARMAN                 )
CONNECTED SERVICES, and SAMSUNG        )
ELECTRONICS,                           )
                                       )
        Defendants.                    )

───────────────────────────────────────────────

REPORT AND RECOMMENDATION

───────────────────────────────────────────────

Before the court is a Motion to Dismiss filed by defendants Harman Connected Services ("Harman") and Aaron Thompson.[1] (ECF No. 20.) *Pro se* plaintiff Chris A. Pritchard filed a response on April 5, 2023. (ECF No. 28.) The defendants filed a reply on April 26, 2023. (ECF No. 29.) Pritchard filed a sur-reply on April 28, 2023.[2] (ECF No. 30.) On May 30, 2023, the undersigned entered an order for additional briefing on the Motion to Dismiss. (ECF No. 31.)

───────────────────

[1]Pursuant to Administrative Order No. 2013-05, this case has been referred to the United States magistrate judge for management and for all pretrial matters for determination or report and recommendation, as appropriate.

[2]Pritchard did not seek leave to file a sur-reply. However, in light of his *pro se* status and in the interest of completeness, the undersigned will consider the sur-reply in this Report and Recommendation.

Defendants filed a response to that order on June 6, 2023, and
Pritchard filed his response on June 13, 2023. (ECF Nos. 32, 33.)

For the reasons below, it is recommended that the Motion to
Dismiss be granted.

## I.   PROPOSED FINDINGS OF FACT

The following factual allegations are taken primarily from
the amended complaint and accepted as true for purposes of deciding
the Motion to Dismiss. Chris Pritchard is an inventor who resides
in Germantown, Tennessee. (ECF No. 18 at PageID 64.) He holds
design patent US D 904,256 S, issued on December 8, 2020, and
utility patent US 11,558,584 B2, issued on January 17, 2023, for
a dashcam with artificial intelligence ("AI") capabilities. (Id.
at PageID 65.)

In 2021, Pritchard sought to contract with an engineering
firm in order to manufacture his product. (Id. at PageID 66.) To
accomplish this, he reached out via email to Aaron Thompson, the
Senior Platform Director at Harman and a resident of Brighton,
Michigan. (Id.; ECF No. 32 at PageID 264.) Harman is a wholly-
owned subsidiary of Samsung Electronics Co., Ltd. ("Samsung"), a
South Korean entity based in Seoul, South Korea. (ECF No. 18 at
PageID 65.) Harman is a Delaware corporation headquartered in
Mountain View, California that supplies services to the automotive
and consumer products industries. (ECF No. 20 at PageID 99; 20-1
at PageID 102.) In his initial contact, Pritchard informed Thompson

that he had a dashcam prototype for which he held the design patent and utility patent-pending, and that he would like to contract with Harman to build the product. (ECF No. 18 at PageID 66.) Thompson sent Pritchard a calendar invitation for a phone call via email. (Id.)

On December 3, 2021, Pritchard and Thompson spoke on the phone for twenty-six minutes and discussed Pritchard's prototype. (Id. at PageID 66, 71.) Thompson told Pritchard that "the correct way to go about sharing information and getting started on a future collaborative effort, would be to work up a Non-Disclosure Agreement (NDA)." (Id.) Thompson offered to draft the agreement but told Pritchard that "the proper wording for the NDA would need to include word specific content related to the product." (Id.) As a result of this representation, Pritchard shared "very specific proprietary design, technical and AI operations of the product not revealed in the patent(s) so that the NDA . . . would encompass all the necessary details for protection of all parties involved." (Id.) Thompson said he would provide the NDA to Pritchard within forty-eight hours. (Id.)

After not hearing from Thompson for two weeks, Pritchard contacted him again. (Id. at PageID 67.) Thompson responded that he was on vacation, but that the NDA was being drafted by Harman's legal department. (Id.) Pritchard heard nothing more during the remainder of December 2021 or January 2022. (Id.) On February 9,

- 3 -

2022, he emailed Harman's Global Director of New Business
Development, who said he would attempt to help Pritchard. (Id.)
Pritchard also contacted Harman's customer service phone line.
(Id.) On April 6, 2022, Pritchard received a phone call from
Harman's Client Director, who said he would work on the matter.
(Id. at PageID 68.) The Client Director emailed Pritchard to tell
him that Thompson would be back in contact "when the timing was
right for a business opportunity." (Id.) He later emailed Pritchard
again to tell him that he had encouraged Thompson to contact
Pritchard once more. (Id.) Pritchard was not contacted by any
Harman employees after this email. (Id.)

In June of 2022, Pritchard visited Harman's website and
discovered "an exact replica of Plaintiff's product" that was
"complete with literally every item discussed on the phone calls
in December 2021, and mimicked every AI operation listed in the
patent pending page on the USPTO website." (Id. at PageID 68-69.)
According to Pritchard, this web posting was proof that "he was
duped into divulging trade secrets and protected IP information
under the guise of information needing to be disclosed for the
proper wording of a Non-Disclosure agreement." (Id. at PageID 69.)

Pritchard filed suit in this district court on December 9,
2022. (ECF No. 1.) He filed an amended complaint on January 23,
2023. (ECF No. 18.) In his amended complaint, Pritchard brings
eleven counts: 1) trade secret misappropriation; 2) infringement

of U.S. Patent No. US 11,558,584 B2; 3) infringement of U.S. Patent
No. D904,258 S; 4) breach of implied duty of good faith and fair
dealing; 5) declaratory judgment; 6) fraud – intentional
misrepresentation; 7) fraud – concealment; 8) promissory fraud; 9)
negligent misrepresentation; 10) breach of contract; and 11) tort
of another. (Id.)

Harman and Thompson filed the present Motion to Dismiss on
February 6, 2023.[3] (ECF No. 20.) The defendants argue that this
court lacks personal jurisdiction and is not the proper venue for
these claims. (Id.) They further assert that Pritchard has failed
to state a claim upon which relief can be granted. (Id.) Pritchard
responded on April 5, 2023, arguing that because Harman has a
registered agent in Tennessee, it is subject to the court's
jurisdiction here. (ECF No. 28.) In his supplemental brief,
Pritchard also contends that because Harman formerly had an
automotive plant in West Tennessee, venue for the patent claims is
proper in this district. (ECF No. 33 at PageID 272.) Pritchard
alleges that the plant in question, which shut down operations in

---

[3]Samsung is also a named defendant in this suit, but is not a party
to this motion. It appears that Samsung has not yet been served.
(ECF No. 20-1 at PageID 97.) Pritchard mistakenly served a
different entity on December 29, 2022. (ECF No. 9.) He informed
Thompson and Harman that he intended to serve Samsung under the
Hague Service Convention. (ECF No. 20-1 at PageID 97.) In his
supplemental brief, Pritchard claims that "Samsung has been duly
served but has ignored service." (ECF No. 33 at PageID 271.)
However, there is presently no indication on the docket that
Samsung has been properly served.

the year 2000, is "permanently bound in perpetuity by an Environmental covenant regulated by the EPA." (<u>Id.</u> at PageID 275.)

## II.  PROPOSED CONCLUSIONS OF LAW

### A.  Legal Standard

#### 1.  Rule 12(b)(2)

A defendant may move under Rule 12(b)(2) to dismiss a complaint for lack of personal jurisdiction. Fed R. Civ. P. 12(b)(2). "Personal jurisdiction is '[a]n essential element of the jurisdiction of a district . . . court' and without personal jurisdiction the court is 'powerless to proceed to an adjudication.'" <u>Mgmt. Registry, Inc. v. Cloud Consulting Partners, Inc.</u>, No. 3:19-CV-00340-JHM, 2019 WL 4478860, at *3 (W.D. Ky. Sept. 18, 2019) (quoting <u>Emp'rs Reinsurance Corp. v. Bryant</u>, 299 U.S. 374, 382 (1937)). In order to defeat a motion to dismiss under Rule 12(b)(2), the plaintiff must make a *prima facie* case that the court has personal jurisdiction. <u>Conn v. Zakharov</u>, 667 F.3d 705, 711 (6th Cir. 2012). The court must consider the pleadings in the light most favorable to the plaintiff, but also must consider any undisputed factual assertions by the defendant. <u>Id.</u>

#### 2.  Rule 12(b)(3)

Pursuant to Federal Rule of Civil Procedure 12(b)(3), a defendant may also move to dismiss the plaintiff's complaint for improper venue. On a Rule 12(b)(3) motion to dismiss, the plaintiff bears the burden of proving that venue is proper. <u>Brown v. Desoto</u>

Cty. Schs., No. 14-cv-02174-SHM/tmp, 2014 WL 3952835, at *1 (W.D.
Tenn. Jun. 12, 2014). The court may examine facts outside of the
complaint, but must draw reasonable inferences and resolve factual
conflicts in favor of the plaintiff. Roberts v. Paulin, No. 07-
CV-13207, 2007 WL 3203969, at *2 (E.D. Mich. Oct. 31, 2007). If
the court finds that venue is improper, it has the discretion to
either dismiss the case or transfer it to the district in which it
could have been brought. Id.; 28 U.S.C. § 1406(a).

3. Rule 12(b)(6)

In deciding a Rule 12(b)(6) motion to dismiss for failure to
state a claim upon which relief can be granted, the court views
the plaintiff's allegations in the light most favorable to them
and accepts all well-pleaded factual allegations as true. Ashcroft
v. Iqbal, 556 U.S. 662, 678-79 (2009). Federal Rule of Civil
Procedure 8(a)(2) requires only "a short and plain statement of
the claim." Fed. R. Civ. P. 8(a)(2). However, "[t]he factual
allegations in the complaint need to be sufficient to give notice
to the defendant as to what claims are alleged, and the plaintiff
must plead 'sufficient factual matter' to render the legal claim
plausible, i.e., more than merely possible." Fritz v. Charter Twp.
of Comstock, 592 F.3d 718, 722 (6th Cir. 2010) (quoting Iqbal, 556
U.S. at 677). "The plausibility standard is not akin to a
'probability requirement,' but it asks for more than a sheer
possibility that a defendant has acted unlawfully." Iqbal, 556

- 7 -

U.S. at 678 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 557
(2007)). To satisfy this requirement, the plaintiff must plead
more than "labels and conclusions," "a formulaic recitation of the
elements of a cause of action," or "naked assertions devoid of
further factual enhancement." Id. (alteration omitted) (quoting
Twombly, 550 U.S. at 555, 557). "A claim has facial plausibility
when the plaintiff pleads factual content that allows the court to
draw the reasonable inference that the defendant is liable for the
misconduct alleged." Id.

**B.   Personal Jurisdiction**

Pritchard has asserted both patent and non-patent claims
against Harman but has only asserted non-patent claims against
Thompson. (ECF No. 18.) When determining whether personal
jurisdiction exists over a patent claim, the court must rely on
the law of the Federal Circuit. Zinganything, LLC v. Wish.com, No.
5:16CV20, 2016 WL 5232982, at *2 (N.D. Ohio Sept. 22, 2016) (citing
Imaging, Inc. v. Coyle, 340 F.3d 1344, 1348 (Fed. Cir. 2003)).
Federal Circuit law also governs the personal jurisdiction of non-
patent claims if "'the resolution of the patent infringement issue
will be a significant factor' in determining liability under the
non-patent claims." Breckenridge Pharm., Inc. v. Metabolite Labs.,
Inc., 444 F.3d 1356, 1361 (Fed. Cir. 2006) (quoting CD Sys., Inc.
v. Aarotech Labs., Inc., 160 F.3d 1373, 1377 (Fed. Cir. 1998)). In
this case, the undersigned finds that the resolution of Pritchard's

patent claims against Harman will be a significant factor in determining whether Harman is liable under Pritchard's non-patent claims. Federal Circuit law therefore applies to all of his claims against Harman. However, because Pritchard has only asserted non-patent claims against Thompson, Sixth Circuit law governs whether this court has jurisdiction over him.

In both Circuits, to determine whether personal jurisdiction over an out-of-state defendant exists, a federal court makes two determinations: "whether a forum state's long-arm statute permits service of process, and whether the assertion of personal jurisdiction would violate due process." Avocent Huntsville Corp. v. Aten Int'l Co., 552 F.3d 1324, 1329 (Fed. Cir. 2008); see Brunner v. Hampson, 441 F.3d 457, 463 (6th Cir. 2006). Jurisdiction must comply with both the state's long-arm statute and federal constitutional law in order to be properly exercised. Radio Sys. Corp. v. Accession, Inc., 638 F.3d 785, 789 (Fed. Cir. 2011) (citing Avocent, 552 F.3d at 1329); Brunner, 441 F.3d at 463. In Tennessee, nonresidents are subject to the jurisdiction of the courts of the state "as to any action or claim for relief arising from: (1) The transaction of any business within this state; (2) Any tortious act or omission within the state; . . . (6) Any basis not inconsistent with the constitution of this state or of the United States[.]" Tenn. Code Ann. § 20-2-214. Because Tennessee's long-arm statute allows the exercise of personal jurisdiction to

the full extent permissible under the federal constitution, the analysis of both questions is the same. Maxchief Invs. Ltd. v. Wok & Pan, Ind., Inc., 909 F.3d 1134, 1137 (Fed. Cir. 2018) (citing First Cmty. Bank, N.A. v. First Tenn. Bank, N.A., 489 S.W.3d 369, 383–84 (Tenn. 2015)); see Smith v. Home Depot USA, Inc., 294 F. App'x 186, 189 (6th Cir. 2008).

The federal constitutional requirement of due process is satisfied when the plaintiff shows that the defendant has "sufficient 'minimum contacts' with the forum state such that the suit not offend 'traditional notions of fair play and substantial justice.'" Maxchief Invs., 909 F.3d at 1137 (quoting Bristol-Myers Squibb Co. v. Superior Ct. of California, 582 U.S. 255, 271 (2017)). Federal courts may exercise two varieties of personal jurisdiction: general jurisdiction or specific jurisdiction. NexLearn, LLC v. Allen Interactions, Inc., 859 F.3d 1371, 1375 (Fed. Cir. 2017); see S. Concrete Prod., Inc. v. Liberty Holdings, L.P., No. 1:19-cv-01105-STA-jay, 2021 WL 5099601, at *2 (W.D. Tenn. Nov. 2, 2021) (quoting Int'l Shoe Co. v. State of Wash., Off. of Unemployment Comp. & Placement, 326 U.S. 310, 316 (1945)).

1. Specific Jurisdiction

The law governing specific jurisdiction is the same in both the Sixth Circuit and the Federal Circuit. Specific jurisdiction is based on the relationship between "the defendant, the forum, and the litigation." NexLearn, 859 F.3d at 1375 (citing Walden v.

Fiore, 571 U.S. 277, 284 (2014)). In order for specific jurisdiction to exist, the court must determine that: "(1) the defendant purposefully directed its activities at residents of the forum, (2) the claim arises out of or relates to those activities, and (3) assertion of personal jurisdiction is reasonable and fair." Avocent, 552 F.3d at 1332 (citing Breckenridge Pharm., 444 F.3d at 1362); see Beydoun v. Wataniya Rests. Holding, Q.S.C., 768 F.3d 499, 505 (6th Cir. 2014). In order for the first prong of this test to be satisfied, the defendants must have taken "'some act by which [they] purposefully avail[ed] [themselves] of the privilege of conducting activities within the forum State.'" Trimble Inc. v. PerDiemCo LLC, 997 F.3d 1147, 1153 (Fed. Cir. 2021) (quoting Int'l Shoe Co., 326 U.S. at 316–17); see Beydoun, 768 F.3d at 505–06 (citing Neogen Corp. v. Neo Gen Screening, Inc., 282 F.3d 883, 889 (6th Cir. 2002) and Fortis Corporate Ins. v. Viken Ship Mgmt., 450 F.3d 214, 218 (6th Cir. 2006)) ("In the Sixth Circuit, the emphasis in the purposeful availment inquiry is whether the defendant has engaged in some overt actions connecting the defendant with the forum state.").

The undersigned finds that Pritchard has not made this showing for either defendant. In his complaint, Pritchard acknowledges that he initiated contact with Thompson. (ECF No. 18 at PageID 66; No. 20-2 at PageID 121.) When the two spoke on the phone, Thompson was not aware Pritchard was calling him from Tennessee. (ECF No.

20-2 at PageID 121.) After the phone call, neither Thompson nor any other employee at Harman continued to pursue a business relationship with Pritchard. (ECF No. 18 at PageID 66.) To the extent that there were further interactions between Pritchard and the defendants, they were brought about by Pritchard. (ECF No. 18 at PageID 66-68.) It is clear from these facts that there were no purposeful actions taken by the defendants to engage in business in Tennessee. Because there was no purposeful availment, the undersigned finds that this court lacks specific jurisdiction over either defendant.

    2.   <u>General Jurisdiction</u>

The law of general jurisdiction varies depending on whether a defendant is an individual or a corporation. It is undisputed that an individual, such as Thompson, is subject to general jurisdiction where they are domiciled. <u>Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.</u>, 141 S. Ct. 1017, 1024 (2021) (citing <u>Daimler AG v. Bauman</u>, 571 U.S. 117, 137 (2014)). Thompson is domiciled in Michigan. (ECF No. 20-2 at PageID 119.) This court therefore lacks general jurisdiction over Thompson. For this reason, the undersigned recommends that the Motion to Dismiss for lack of personal jurisdiction be granted for all claims against Thompson.

Whether general jurisdiction exists over a corporate entity like Harman is more complicated. The modern iteration of general jurisdiction in the corporate context was first described in

International Shoe, which held that general jurisdiction exists where a corporation's "continuous corporate operations within a state [are] so substantial and of such a nature as to justify suit against it on causes of action arising from dealings entirely distinct from those activities." 326 U.S. at 318. General jurisdiction can thus be exercised when a corporation's affiliations with a state are "so 'continuous and systematic' as to render them essentially at home in the forum State." Daimler, 571 U.S. at 127 (citing Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 919 (2011)). In the "paradigm" case, a corporation is subject to general jurisdiction in its state of incorporation and the state where it is headquartered. Ford Motor Co., 141 S. Ct. at 1024 (citing Daimler, 571 U.S. at 137).

The primary issue in the present case is whether this court may exercise general jurisdiction over Harman on a different basis: because Harman has consented to the general jurisdiction of Tennessee by complying with the state's registration statute for foreign corporations. (ECF No. 28 at PageID 227-28.) In addition to the jurisdictional principles set forth above, a defendant is subject to personal jurisdiction in a state where it has consented to that jurisdiction. See Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 n.14 (1985). Historically, one means of consenting to personal jurisdiction in a state was compliance with that state's foreign corporation law by designating an agent for receipt of

process. See Penn. Fire Ins. Co. of Philadelphia v. Gold Issue
Min. & Mill. Co., 243 U.S. 93, 96 (1917). However, the ruling in
International Shoe "cast doubt on the idea, once pursued by many
state courts, that a company 'consents' to suit when it is forced
to incorporate or designate an agent for receipt of process in a
jurisdiction other than its home State." Ford Motor Co., 141 S.
Ct. at 1037 (Gorsuch, J., concurring). This is because
International Shoe and its progeny - the decisions that serve as
the basis for the "essentially at home" rule - were specific to
cases of "general jurisdiction appropriately exercised over a
foreign corporation that has *not consented* to suit in the forum."
Daimler, 571 U.S. at 137 (emphasis added); Int'l Shoe, 326 U.S. at
317. For that reason, in 2021, the Supreme Court noted that "[i]t
is unclear what remains of the old 'consent' theory after
International Shoe's criticism. Some courts read International
Shoe and the cases that follow as effectively foreclosing it, while
others insist it remains viable." Ford Motor Co., 141 S. Ct. at
1037 n.3 (Gorsuch, J., concurring).

This confusion has led Circuits to take different approaches
to the consent question. The Sixth Circuit, for example, analyzed
the Supreme Court's general jurisdiction precedent and concluded
that "the mere designation of an agent in compliance with the
service-of-process statute does not automatically eliminate the
requirement of minimum contacts to establish personal

- 14 -

jurisdiction." <u>Pittock v. Otis Elevator Co.</u>, 8 F.3d 325, 329 (6th Cir. 1993); <u>see</u> <u>Relyant Glob., LLC v. Gibraltar-Caddell</u>, No. 3:22-CV-183, 2023 WL 3267757, at *3 (E.D. Tenn. Mar. 31, 2023) (holding that "the weight of authority and binding Sixth Circuit precedent require the Court to find that standing alone, the designation of an agent for service of process [in Tennessee] is not enough to confer personal jurisdiction on the Court."). Meanwhile, the Federal Circuit, which governs jurisdictional questions in patent cases, to date has not taken a position on this issue. In <u>Acorda Therapeutics Inc. v. Mylan Pharma., Inc.</u>, 817 F.3d 755 (Fed. Cir. 2016), Judge Kathleen O'Malley discussed the matter at length in a concurrence, where she stated that "<u>Daimler</u> did not overrule the line of Supreme Court authority establishing that a corporation may consent to jurisdiction over its person by choosing to comply with a state's registration statute." <u>Id.</u> at 767. According to the concurrence, the court should have rested its holding on the defendant's "voluntary, express consent" to the jurisdiction of Delaware via compliance with the state's registration statute. <u>Id.</u> at 770. However, the reasoning set forth in Judge O'Malley's <u>Acorda</u> concurrence has not been adopted by the Federal Circuit.

On June 27, 2023, the Supreme Court answered the question directly: the Court's "rule for consent-based jurisdiction has not been overruled. <u>International Shoe</u> governs where a defendant has not consented to exercise of jurisdiction." <u>Mallory v. Norfolk S.</u>

Ry. Co., No. 21-1168, 2023 WL 4187749, at *12 n.11 (U.S. June 27,
2023) (internal citations omitted). In Mallory, the plaintiff
argued that Norfolk Southern Railway was subject to personal
jurisdiction in Pennsylvania because it had complied with the
state's registration statute for foreign corporations. Id. at *3.
The statute in question "is explicit that 'qualification as a
foreign corporation' shall permit state courts to 'exercise
general personal jurisdiction' over a registered foreign
corporation." Id. at *7 (quoting 42 Pa. Cons. Stat.
§ 5301(a)(2)(i)). Norfolk Southern contended that exercise of
general jurisdiction based on its compliance with the registration
statute violated the Due Process clause. Id. at *2. The Supreme
Court disagreed and held that general jurisdiction was properly
exercised. Id. at *12. The idea that corporations can consent to
general jurisdiction by complying with a state's registration
statute remains good law because "all International Shoe did was
stake out an *additional* road to jurisdiction over out-of-state
corporations." Id. at *8 (emphasis in original). "Consistent with
all this, our precedents applying International Shoe have long
spoken of the decision as asking whether a state court may exercise
jurisdiction over a corporate defendant that *has not consented* to
suit in the forum." Id. (citing Goodyear, 564 U. S. at 927–928)
(emphasis in original). However, the International Shoe test is
not the only means through which a state can exercise jurisdiction

because "an out-of-state corporation that *has* consented to in-
state suits in order to do business in the forum" is similarly
"susceptible to suit there." Id. According to Mallory, compliance
with Pennsylvania's registration statute is one means of
expressing this consent.  Id. at *7.

Mallory is not conclusive on the question of whether the
Federal Circuit permits this court to exercise personal
jurisdiction over Harman. Unlike the Pennsylvania registration
statute, Tennessee's analogous law contains no language expressly
affirming the corporation's consent to general jurisdiction. See
Tenn. Code Ann. §§ 48-25-101(a), 107 (2002). Thus, the issue of
whether a corporation consents to jurisdiction by complying with
this statute remains open to debate.

Given the lack of explicit language in the Tennessee statute
stating that registration of a foreign corporation constitutes
consent to the exercise general personal jurisdiction, the
undersigned finds that this case is distinguishable from Mallory.
Unlike a corporation registering to do business in Pennsylvania,
Harman did not expressly consent to the general personal
jurisdiction of Tennessee merely by complying with Tennessee's
statute. Because there has been no consent, the International Shoe
framework applies. Mallory, 2023 WL 4187749, at *8. Under
International Shoe, a court sitting in Tennessee may exercise
general personal jurisdiction over a corporation that is

incorporated or headquartered there. Ford Motor Co., 141 S. Ct. at 1024 (citing Daimler, 571 U.S. at 137). Harman is incorporated in Delaware and headquartered in California, and thus does not meet either of these requirements. For that reason, the undersigned finds that this court lacks personal jurisdiction over Harman. It is therefore recommended that all claims against Harman be dismissed. However, in the interest of completeness, the undersigned will proceed with addressing the remaining arguments in the Motion to Dismiss.

**C.   Venue**

1.   Patent Claims

Venue in a patent action is governed by 28 U.S.C. § 1400(b), which provides: "Any civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business." The first portion of the venue provision provides that venue is proper "where the defendant resides." 28 U.S.C. § 1400(b). A domestic corporation resides only in its state of incorporation for purposes of the patent venue statute. TC Heartland LLC v. Kraft Foods Group Brands LLC, 581 U.S. 258, 262 (2017). Although Pritchard claims in his complaint that Harman is based in Novi, Michigan, according to

Thompson's declaration, it is actually incorporated in Delaware.[4] (ECF No. 20-2 at PageID 119.) Because Harman does not reside in Tennessee, venue is not proper pursuant to the first provision of 28 U.S.C. § 1400(b).

The second provision states that venue is also proper "where the defendant has committed acts of infringement and has a regular and established place of business." 28 U.S.C. § 1400(b). The Federal Circuit explained that in order to establish that a defendant has a "regular and established place of business" within the district, the following requirements must be met: "(1) a physical place in the district; (2) it must be a regular and established place of business; and (3) it must be the place of the defendant." Singapore Asahi Chemical & Soldier Indus. Pte Ltd v. Apple Inc., No. 1:18 CV 1662, 2018 WL 6018876, at *1 (N.D. Ohio Nov. 16, 2018) (citing In re Cray Inc., 871 F.3d 1355, 1360 (Fed. Cir. 2017)).

---

[4]Samsung is a foreign corporation located in South Korea. Under 28 U.S.C. § 1391(d), "a defendant not resident in the United States may be sued in any judicial district, and the joinder of such a defendant shall be disregarded in determining where the action may be brought with respect to other defendants." Lawsuits against foreign entities are "wholly outside the operation of all the federal venue laws, general and special." Brunette Mach. Works, Ltd. v. Kockum Indus., Inc., 406 U.S. 706, 714 (1972). Although venue may be proper as to Samsung, this does not affect the analysis as to the other defendants. See Music City Metals Co., Inc. v. Jingchang Cai, No. 3:17-cv-766, 2017 WL 4641866, at *6 (M.D. Tenn. Oct. 17, 2017).

Pritchard argues that venue is proper in this district because Harman formerly had an automotive plant in Bolivar, Tennessee. (ECF No. 33 at PageID 275.) That plant ceased operations over twenty years ago; however, Pritchard argues that because the plant "is permanently bound in perpetuity by an Environmental covenant regulated by the EPA . . . defendants have a forever business obligation to the citizens of Bolivar, TN." (Id.) Even if the court accepts Pritchard allegations as true, the fact that there might be ongoing Environmental Protection Agency oversight over a business that has not been operational for over two decades does not qualify as a "regular and established" place of business under 28 U.S.C. § 1400(b). Even assuming that Harman committed acts of infringement in the Western District of Tennessee, Pritchard has not established that Harman has a physical place of business in the district. Therefore, pursuant to 28 U.S.C. § 1400(b), venue in the Western District of Tennessee is not proper and the patent claims should be dismissed on this additional ground.

    2.    Non-Patent Claims

28 U.S.C. § 1400(b) does not govern venue of non-patent infringement claims, "even those that may involve or relate to patents." Norkol/Fibercore, Inc. v. Grobb, 279 F. Supp. 2d 993, 999 (E.D. Wis. 2003) (citing Modern Comput. Corp. v. Ma, 862 F. Supp. 938, 946-47 (E.D.N.Y. 1994); Medtronic, Inc. v. Am. Optical Corp., 337 F. Supp. 490, 493 (D. Minn. 1971); De Luxe Game Corp.

v. Wonder Prods. Co., 157 F. Supp. 696, 699–700 (S.D.N.Y.
1957)). In the absence of a special venue provision, 28 U.S.C.
§ 1391 controls a plaintiff's choice of venue in civil cases. Venue
in federal court is proper in:

> (1)  a judicial district in which any defendant resides,
> if all defendants are residents of the State in which
> the district is located;

> (2)  a judicial district in which a substantial part of
> the events or omissions giving rise to the claim
> occurred, or a substantial part of property that is
> the subject of the action is situated; or

> (3)  if there is no district in which an action may
> otherwise be brought as provided in this section, any
> judicial district in which any defendant is subject
> to the court's personal jurisdiction with respect to
> such action.

28 U.S.C. § 1391(b)(1)-(3).

Based on the facts alleged in Pritchard's complaint, the
Western District of Tennessee appears to be a proper venue for the
non-patent claims under 28 U.S.C. § 1391(b)(2). The phone call
with Thompson that resulted in the alleged misappropriation of
Pritchard's trade secrets took place in Tennessee. The undersigned
finds that venue is proper as to the non-patent claims against
Harman, and thus will proceed with addressing the Rule 12(b)(6)
arguments as to those claims.

**E.    Failure to State a Claim**

    1.    Trade Secret Misappropriation

Pritchard's amended complaint alleges that Harman misappropriated trade secrets in violation of two statutes: 1) the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836(b); and 2) the Tennessee Uniform Trade Secrets Act ("TUTSA"), Tenn. Code Ann. § 47-25-1701, <u>et seq</u>. (ECF No. 18 at PageID 69-70.) Pritchard alleges that he divulged trade secret information relating to an AI enabled dashcam to a Harman employee. (<u>Id.</u> at PageID 71.) Subsequently, Pritchard alleges that Harman misappropriated these trade secrets in a newly released product. (<u>Id.</u>)

Because the statutory schemes of the TUTSA and DTSA are "largely the same," courts often consolidate the analyses of the two schemes. <u>BNA Assocs., LLC v. Goldman Sachs Specialty Lending Grp., L.P.</u>, No. 3:21-CV-00481, 2022 WL 1449707, at *4 (M.D. Tenn. May 9, 2022) (citing <u>Enchant Christmas Light Maze & Mkt. Ltd. v. Glowco, LLC</u>, No. 3:19-CV-00966, 2019 WL 5964531, at *5 (M.D. Tenn. Nov. 13, 2019)). The court will therefore analyze these claims together. "[T]he elements for a misappropriation of trade secrets claim are: (1) the existence of a trade secret; (2) misappropriation of the trade secret by the defendant; and (3) resulting detriment to the plaintiff." <u>Sigma Corp. v. Island Indus., Inc.</u>, No. 2:22-cv-02436-JPM-cgc, 2023 WL 2290793, at *5 (W.D. Tenn. Feb. 28, 2023) (quoting <u>BNA Assocs.</u>, 2022 WL 1449707, at *4). Defendants argue that Pritchard has failed to meet the first two elements of a trade secret claim.

Harman contends that Pritchard has failed to allege the existence of a trade secret. For information to qualify as a "trade secret," (1) the information must derive independent economic value from not being generally known or ascertainable by proper means, (2) others must be able to obtain economic value from the information's disclosure or use, and (3) reasonable efforts must have been made to maintain the secrecy of the information. See Tenn. Code Ann. § 47-25-1702(4); 18 U.S.C. 1839(3); see also Oakwood Lab'ys LLC v. Thanoo, 999 F.3d 892, 905 (3d Cir. 2021); Williams-Sonoma Direct, Inc. v. Arhaus, LLC, 304 F.R.D. 520, 527 (W.D. Tenn. 2015) (quoting J.T. Shannon Lumber Co. v. Barrett, No. 2:07-cv-2847-JPM-cgc, 2010 WL 3069818, at *4 (W.D. Tenn. Aug. 4, 2010)).

Harman asserts Pritchard does not meet the first requirement for the existence of a trade secret because the information regarding Pritchard's AI dashcam was publicly available in the design and utility patents. (ECF No. 20-1 at PageID 107.) Pritchard states in his complaint that he discussed "very specific proprietary design, technical and AI operations of the product not revealed in the patent." (ECF No. 18 at PageID 66.) However, Harman argues that this is not enough because Pritchard fails to identify these "very specific" details. (ECF No. 20-1 at PageID 107.)

Although Pritchard "need not plead the trade secret with specificity in the complaint," he must do more than simply restate

the elements of a trade secret. Elsevier Inc. v. Doctor Evidence, LLC, 17-cv-5540 (KBF), 2018 WL 557906, at *6 (S.D.N.Y. Jan. 23, 2018) (quoting Bancorp Servs., LLC v. Am. Gen. Life Ins. Co., No. 14-cv-9687, 2016 WL 4916969, at *11 (S.D.N.Y. Feb. 11, 2016)). District courts within the Sixth Circuit have held that complaints need only allege the trade secret in general terms or in general contours. See, e.g., Kelly Services, v. Eidnes, 530 F. Supp. 2d 940, 948 (E.D. Mich. 2008); Lovata Electrofin, Inc. v. Metal Processing Int'l, L.P., 3:11-cv-00398, 2012 WL 3961226, at *8 (W.D. Ky. Sept. 10, 2012). However, that information must still be identified "with enough specificity to place a defendant on notice of the bases for the claim being made against it." Aristotle Int'l, Inc. v. Acuant, Inc., No. 22-cv-741 (DLF), 2023 WL 1469038, at *8 (D.D.C. Feb. 2, 2023) (quoting Oakwood Lab'ys, 999 F.3d at 906); see Smith v. WWE, Inc., No. 3:22-cv-1580-B-BN, 2023 WL 4534960, at *4 (N.D. Tex. June 14, 2023) (finding "confidential trade secret information . . . including market analysis, opportunity analysis, strategic analysis and other business information regarding a concept for a minor league or developmental league spring football league" lacked facial plausibility); Cayo, Inc. v. Swiss Reinsurance Am. Corp., No. 23-cv-00105-MEH, 2023 WL 4744196, at *13 (D. Colo. May 2, 2023) (finding "confidential and proprietary intellectual property, including the coding, design and processes" too vague to establish a trade secret). "[D]eciding whether a

- 24 -

plaintiff has sufficiently disclosed its trade secrets is a fact-specific question to be decided on a case-by-case basis." Oakwood Lab'ys, 999 F.3d at 906 (citations and quotation marks omitted).[5]

Here, the complaint merely alleges that Pritchard disclosed "very specific proprietary design, technical and AI operations of the product." (ECF No. 18 at PageID 66.) Without more, these allegations are not specific enough to place Harman on notice of the nature of the claims being made against it. Aristotle, 2023 WL 1469038, at *8. For that reason, it is recommended that the Motion to Dismiss as to this claim be granted on this additional ground. Because Pritchard has not sufficiently plead the first element of a trade secret misappropriation claim — the existence of a trade secret — the undersigned need not address the second element of whether Harman misappropriated that trade secret.

    2.   Breach of Contract

Harman argues that Pritchard's breach of contract claim should be dismissed because Pritchard has failed to allege the

---

[5]Harman relies heavily on a recent Sixth Circuit case, Caudill Seed and Warehouse Co. v. Jarrow Formulas, Inc., 53 F.4th 368, 380 (6th Cir. 2022), to support its argument that Pritchard's allegations are insufficient. However, that case addresses a plaintiff's obligation at trial, rather than at the motion to dismiss stage. Id. ("If a plaintiff effectively assert[s] that all information in or about its [product] is a trade secret, then it brings a case both too vague and too inclusive, and does not allow a jury to separate the trade secrets from the other information that goes into any product in the field.") (internal citations omitted).

formation of a contract. To establish a claim for breach of contract under Tennessee law, a plaintiff must plausibly allege: (1) the existence of an enforceable contract; (2) non-performance amounting to a breach of that contract; and (3) damages caused by the breach. Person v. Roach, No. 14-cv-2788-JDT-tmp, 2015 WL 3606595, at *5 (W.D. Tenn. May 11, 2015) (citing C & W Asset Acquisition, LLC v. Oggs, 230 S.W.3d 671, 676–77 (Tenn. Ct. App. 2007)). A contract, either written or oral, "must result from a meeting of the minds of the parties in mutual assent to the terms, must be based upon a sufficient consideration, free from fraud or undue influence, not against public policy and sufficiently definite to be enforced." Gatlin v. Scott, No. M2018-02293-COA-R3-CV, 2019 WL 4567497, at *2 (Tenn. Ct. App. Sept. 20, 2019) (citing Higgins v. Oil, Chem. and Atomic Workers Int'l Union, 811 S.W.2d 875, 879 (Tenn. 1991)). "The legal mechanism by which parties show their assent to be bound is through offer and acceptance." Id. (quoting Moody Realty Co., Inc. v. Huestis, 237 S.W.3d 666, 675, n.8 (Tenn. Ct. App.  2007)).

Pritchard alleges in his amended complaint that an "oral contract was entered on December 3, 2021, at 1:59 p.m., when Plaintiff and Mr. Thompson engaged in a confidential call upon which Plaintiff sought the correct way to go about sharing information and getting started on a possible, future, collaborative effort regarding Plaintiff's invention." (ECF No. 18

at PageID 82.) This allegation is not sufficient to plausibly establish the existence of a contract. There are no facts that detail an offer, acceptance, and consideration, nor is it clear what was promised by each party under the terms of this alleged oral contract. Thus, the undersigned recommends that the motion as to Pritchard's breach of contract claim be granted on this additional ground.

Pritchard also claims that Harman breached its implied duty of good faith and fair dealing. (ECF No. 18 at PageID 75.) However, "without a contract, [Pritchard] cannot sustain a claim for breach of the implied duty of good faith and fair dealing." Cadence Bank, N.A. v. The Alpha Trust, 473 S.W.3d 756, 774 (Tenn. Ct. App. 2015). Because the undersigned finds that Pritchard has not alleged the existence of a contract, the undersigned recommends that the motion as to this claim be granted for this additional reason.

3.    Remaining State Law Claims

Harman argues that Pritchard's remaining state law claims for fraud and negligent misrepresentation (Counts 6, 7, 8, and 9) are preempted by TUTSA. TUTSA by its terms "displaces conflicting tort, restitutionary, and other [Tennessee] law . . . providing civil remedies for misappropriation of a trade secret." Tenn. Code Ann. § 47-25-1708(a). The Tennessee Supreme Court has not yet interpreted the scope of TUTSA's displacement, but other state and federal courts have applied the "same proof" standard, under which

"a claim will be preempted when it necessarily rises or falls based on whether the defendant is found to have 'misappropriated' a 'trade secret' as those two terms are defined in the [T]UTSA." PGT Trucking, Inc. v. Jones, No. 15-1032, 2015 WL 4094265, at *4 (W.D. Tenn. July 7, 2015) (collecting cases). Stated differently, "if proof of a non-[T]UTSA claim would also simultaneously establish a claim for misappropriation of trade secrets, it is preempted irrespective of whatever surplus elements or proof were necessary to establish it." Id. (quoting Hauck Mfg. Co. v. Astec Indus., Inc., 375 F. Supp. 2d 649, 658 (E.D. Tenn. 2004)). "[P]laintiffs alleging theft or misuse of their ideas, data, or other commercially valuable information are confined to the single cause of action provided by the [T]UTSA." PGT Trucking, 2015 WL 4094265, at *5 (quoting Hauck, 375 F. Supp. 2d 649 at 659).

The facts supporting count six (fraud - intentional misrepresentation), eight (promissory fraud), and nine (negligent misrepresentation) are largely identical. Pritchard alleges that Thompson made misrepresentations that he would draft an NDA in order to trick Pritchard into divulging his trade secrets. These claims "necessarily rise[] or fall[] based on whether the defendant is found to have 'misappropriated' a 'trade secret,'" and thus are preempted by TUTSA. Thus, the undersigned recommends that counts

six, eight, and nine be dismissed on this additional ground.[6]
Hauck, 375 F. Supp. 2d 649 at 657.

Count Seven in Pritchard's complaint is a claim of "fraud – concealment." (ECF No. 18 at PageID 78.) In support of this claim, Pritchard alleges that when he followed up with Harman employees regarding the NDA, they did not give him a clear answer and instead "acted oblivious of the goings-on." (Id.) Pritchard claims that if he had known earlier that "Thompson had already disclosed the trade secrets to the Defendants, he would have made diligent efforts to prevent the Defendants from appropriating the trade secrets and patent(s) into their product." (Id.) Again, this claim is preempted by TUTSA because it depends on whether Harman is found to have misappropriated trade secrets. The undersigned recommends count seven be dismissed for this additional reason.[7]

### III. RECOMMENDATION

For the above reasons, it is recommended that the defendants' Motion to Dismiss be granted.

Respectfully submitted,

s/ Tu M. Pham
_____

---

[6]The undersigned has recommended that Pritchard's TUTSA claim be dismissed. Preemption under TUTSA applies even if a plaintiff fails to plead the existence of a trade secret. Hauck, 375 F. Supp. 2d 649 at 657.

[7]In addition to the claims discussed above, Pritchard brings two other counts: count five (declaratory judgment) and count eleven (tort of another). These "counts" involve forms of relief or are otherwise preempted by TUTSA.

TU M. PHAM
Chief United States Magistrate Judge

August 3, 2023
Date

## NOTICE

**WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY OF THIS REPORT AND RECOMMENDED DISPOSITION, ANY PARTY MAY SERVE AND FILE SPECIFIC WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS AND RECOMMENDATIONS. ANY PARTY MAY RESPOND TO ANOTHER PARTY'S OBJECTIONS WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY. 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b)(2); L.R. 72.1(g)(2). FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS MAY CONSTITUTE A WAIVER OF OBJECTIONS, EXCEPTIONS, AND FURTHER APPEAL.**